IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NXP USA, INC., et al.,

     Plaintiffs,

     v.       :   Civil Action No. 19-1875-RGA

IMPINJ, INC.,

     Defendant.

MEMORANDUM

Kelly E. Farnan, Steven J. Fineman, RICHARDS LAYTON & FINGER, PA, Wilmington, DE; David L. Witcoff, JONES DAY, Chicago, IL, Attorneys for Plaintiffs.

Andrew C. Mayo, Steven J. Balick, ASHBY & GEDDES, Wilmington, DE; Ramsey M. Al-Salam, PERKINS COIE LLP, Seattle, WA, Attorneys for Defendant.

September 23, 2020

1

/s/ Richard G. Andrews
ANDREWS, U.S. DISTRICT JUDGE:

      This is a patent case.  Plaintiffs NXP USA, Inc. and NXP B.V. (together referred to as "NXP") filed suit against Impinj, Inc. alleging that Impinj's Monza 4, 5, and 6 family of UHF RFID tag chips and various Indy RS reader modules infringe one or more of eight asserted patents.  NXP USA owns one of the patents; NXP B.V. owns the other seven.

      The parties are familiar with each other.  They compete in the RAIN RFID integrated circuits market.  (D.I. 11 at 1).  Four months before this case was filed, Impinj sued NXP USA in the Northern District of California, asserting twenty-six of Impinj's patents against NXP USA. *Impinj v. NXP USA*, No. 19-3161 (N.D. Cal.).  The only NXP party in the California case is NXP USA.  (*Id*., D.I. 53).  According to the docket in the California case, Impinj currently asserts twenty claims from six patents.  (*Id*., D.I. 64 at 1-2).   The case is stayed, and IPRs have been instituted on two of the asserted six patents.  The parties have very recently raised a dispute with the California court as to how to proceed.  (*Id*. at 2-9).

      Impinj filed a motion to transfer this case to the Western District of Washington.  (D.I. 9). I had oral argument.  Briefing, including post-argument briefing, is complete.  (D.I. 10, 16, 19, 25, 26).

      NXP USA is a Delaware corporation with its principal place of business in Austin, Texas. NXP B.V. is a Dutch corporation with its principal place of business in the Netherlands.  Impinj is a Delaware corporation with its principal place of business in Seattle, Washington.

      Impinj has one office, in Seattle, and about 250 employees.  (D.I. 11 at 2).  Its annual revenues are about $146 million per year. (D.I. 18, ¶ 5).  The NXP companies "and their

affiliates" have about 30,000 employees and nearly $10 billion per year in revenues. (D.I. 11 at 2). By either metric, employees or revenues, the NXP companies are at least seventy times the size of Impinj. Other than the incorporation of Impinj and NXP USA in Delaware, neither of which has anything to do with the merits of the case, there is no reason in the world for this case to be in this District. There are no witnesses or relevant documentary evidence in Delaware. NXP USA and NXP B.V. appear to be "affiliates," but the exact relationship is not set forth. (D.I. 19 at 1).

The statutory authority for transferring the case is § 1404(a) of Title 28, which in relevant part provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The burden of establishing the need for transfer is the movant's, *see Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995), which in this case is Impinj. "[I]n ruling on [the] motion the plaintiff's choice of venue should not be lightly disturbed." *Id.* The Third Circuit has set forth the framework for analysis:

> In ruling on § 1404(a) motions, courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to 'consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.' While there is no definitive formula or list of the factors to consider, courts have considered many variants of the private and public interests protected by the language of § 1404(a).
> The private interests have included: (1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).
> The public interests have included: (7) the enforceability of the judgment; (8)

practical considerations that could make the trial easy, expeditious, or inexpensive; (9) the relative administrative difficulty in the two fora resulting from court congestion; (10) the local interest in deciding local controversies at home; (11) the public policies of the fora; and (12) the familiarity of the trial judge with the applicable state law in diversity cases.

*Id*. at 879-80 (citations omitted and numbering added).

There is no dispute that this case could have been brought against Impinj in the Western District of Washington, as among other things, its principal place of business in Seattle is in that District.

In my view, interest (1) supports NXP's position that the case should not be transferred. Interests (2), (3), (4), (6), (8), and (9), to varying degrees, support Impinj's request to transfer the case. The other five interests are neutral.

Plaintiffs have chosen Delaware as a forum. That choice weighs strongly in Plaintiffs' favor, although not as strongly as it would if Plaintiffs had their principal place of business (or, indeed, any place of business) in Delaware. *See Shutte v. Armco Steel Corp*., 431 F.2d 22, 25 (3d Cir. 1970) ("plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request"); *Pennwalt Corp. v. Purex Industries, Inc*., 659 F.Supp. 287, 289 (D. Del. 1986) (plaintiff's choice of forum not as compelling if it is not plaintiff's "'home turf'"); *see also In re Link_A_Media Devices Corp*., 662 F.3d 1221, 1223 (Fed. Cir. 2011)("When a plaintiff brings its charges in a venue that is not its home forum, however, that choice of forum is entitled to less deference."). This first factor is the most important factor in the analysis. As I have recently stated, it is the most important factor even when the plaintiff has a principal place of business outside of Delaware, but, "in the overall balancing, while such a plaintiff's choice will still be the most important factor, it will not dominate the balancing to the

4

same extent as it otherwise might." *Express Mobile, Inc. v. Web.com Group, Inc.*, 2020 WL 3971776 at *2 (D. Del. July 14, 2020).  Thus, Plaintiffs' choice of Delaware as a forum weighs strongly against transfer, but not as strongly as if NXP B.V. had some connection to Delaware and if NXP USA had some connection other than incorporation.

Defendant's preference is the Western District of Washington.  It is the Defendant's home turf.  It is undoubtedly the most convenient venue for Defendant.  Defendant's choice has a legitimate basis, and therefore this factor weighs in favor of transfer.

Defendant argues that the claims arose more in Washington than in Delaware, and thus that the third factor favors transfer.  Defendant's theory is that the accused products are not sold in Delaware and that they are designed, but not manufactured, in Washington.  (D.I. 10 at 6).  NXP argues that Impinj conducts business in Delaware, and thus that this factor is neutral.  (D.I. 16 at 7-8).  Defendant replies that it has never sold an accused product to a customer in Delaware.  (D.I. 21).  Impinj products are sold, or offered for sale, throughout the United States, and I would view the claim of infringement as being one that arises wherever the products are sold.  *See In re Acer America Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010).  I conclude that this factor favors transfer, however, as there is no evidence of any actual sales in Delaware, and the design took place in Washington.

In terms of the fourth factor—the convenience of the parties—there are a number of factors to consider: their physical location, the "logistical and operational" costs of necessary travel, and the "relative ability" of the parties to bear the costs.  *See Mitek Sys., Inc. v. United Servs. Automobile Ass'n*, 2012 WL 3777423 at *6 (D. Del. Aug. 20, 2012).  I would summarize the evidence, mostly in connection with the supplemental briefing, as showing that it is marginally more inconvenient for each of the NXP parties (whether based in Austin or in

Europe) to litigate in Seattle than in Wilmington, primarily because the airplane flights are insignificantly longer for the Austin NXP and demonstrably longer for the European NXP, although the marginal increase in inconvenience is not that great for the Europeans, since in either location, they are going to have long flights exacerbated by waits at airports and delays attendant to customs and immigration formalities.  On the other hand, it is markedly more convenient for Impinj to litigate in Seattle than in Wilmington, since such litigation does not require air travel.  Both sides are large and sophisticated corporate parties.  Both are capable of litigating in Delaware, Washington, California (where they are already litigating), and the PTAB (where they are also already litigating).  Nonetheless, in terms of size and financial condition, they are in different leagues.  The NXP parties are to Impinj about the same as France is to Delaware.  This factor overall modestly supports transfer.

At this juncture, it is hard to tell who the witnesses might be.  Much of the dispute on this issue concerns third party witnesses, which I take to be the focus of this factor.  (The convenience of party witnesses is accounted for in the fourth factor).  Impinj asserts that its former employees, such as "Charles Peach," live, or are likely to live within the subpoena power of the Washington court.  (D.I. 10 at 8).  Impinj offers nothing as to why Mr. Peach or any of the unnamed former employees might be significant witnesses.  NXP states that there are eleven inventors on the eight patents, and that the four who are employed by NXP live in Gratkorn, Austria.  (D.I. 16 at 13).  NXP asserts generally that the inventors might testify about conception and reduction to practice. NXP names other witnesses but they appear to be employed by NXP. In reply, Defendant gives further description of who Mr. Peach is, but I cannot conclude on this record that either side has done much more than hint at third-party witnesses who might be available in one court but not the other.  On the remote possibility that ex-employees should be

trial witnesses, they are more likely to be subject to the subpoena power of the Washington court than of this court.  But that is a pretty remote possibility. As far as the third-party inventors go, they do not appear to be subject to the subpoena power of either court.  If the third-party inventors were to decide to testify, travel from Austria to Delaware is marginally easier than travel from Austria to Seattle, but not substantially so.  I would say that at this point there is nothing more than a thin possibility that third-party witnesses would be actual trial witnesses. Thus, it appears to me that the trial in this case will likely boil down to employees of the two parties and various retained experts.  *See In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.").  Such witnesses will appear wherever the trial is held.  Thus, I conclude that this factor is neutral.

The only identified holders of records are the parties, and their records will be able to be produced in whichever forum has the case.   The records of Impinj, which are likely the most important records for this litigation, *see id.*, are likely in Washington.  They are not in Delaware. In any event, there are no records identified as only being available in one of the two locations.[1] Thus, this factor too adds very little to the balancing.  To the extent it has any marginal impact, it favors transfer.

Enforceability of the judgment is not an issue.  (D.I. 10 at 10; D.I. 16 at 15).

---

[1] While there is a paragraph in *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1224 (Fed. Cir. 2011), about "the convenience of the witnesses and the location of the books and records," I do not understand the Federal Circuit to have altered the Third Circuit's focus on the issue being not so much where the witnesses and evidence are, but whether they can be produced in court.

Practical considerations that could make the trial easy, expeditious, or inexpensive favor transfer to Washington. On the whole, a trial in Delaware is likely to be slightly less easy and more expensive for NXP than a trial in the Western District of Washington because of travel considerations and expenses for witnesses, but the difference is extremely slight. A trial in the Western District of Washington is likely to be significantly easier and less expensive for Impinj than a trial in Delaware. On balance, the overall cost and convenience of a trial is likely to be less in Washington. I note that the parties argue about whether I should factor in the convenience of lead counsel. I do not do so, because the choice of counsel (like the choice of expert witnesses) is a discretionary choice by a party, which is subject to improper manipulation and which the party is able to change if financial or other considerations warrant. The parties argue about the meaning of various statistics in support of arguments relating to expedition, that is, how soon do cases (or patent cases between competitors) get to trial. As is usually the case, the parties argue inferences from statistics that measure other things and are not particularly compelling predictors as to how fast this case might get to trial in either venue. I cannot draw any particular conclusion about expedition. Thus, this factor overall slightly favors transfer.

The relative administrative difficulty due to court congestion addresses a slightly different analysis than the expedition factor that I discussed in the last paragraph. I understand this factor to look at each District's caseload more broadly. According to the last available CJRA report (for the period ending September 30, 2019), the twelve district judges and one visiting district judge in the Western District of Washington had 38 old cases and 25 late motions. The four district judges and five visiting district judges of the District of Delaware had 123 old cases and 25 late motions. One other Delaware judge and I each individually had more old cases than the entire Western District. I also note that the most recent recommendations of

the Judicial Conference to Congress provide for one new district judge in Delaware, but none in the Western District of Washington.  I conclude from both these sources that there is greater court congestion in this District than in the Western District of Washington.  Therefore, this factor weighs in favor of transfer.

The parties dispute the "local controversy" factor.  Impinj points to its position as a significant employer in the Western District of Washington.  (D.I. 10 at 11).  NXP points out that this is a patent case involving federal law, and that two of the three parties are incorporated in Delaware.  (D.I. 16 at 18).  While there are times when a party being a significant employer in a district might make the dispute a local controversy, this is not one of them.  The "local controversy" consideration is inapplicable here.  *See Affymetrix, Inc. v. Synteni, Inc.*, 28 F.Supp.2d 192, 207 (D. Del. 1998).  This factor is therefore neutral.

The public policy factor is disputed.  Impinj argues that it is neutral.  (D.I. 10 at 11). NXP argues that it weighs against transfer.  (D.I. 16 at 18-19).  While I think that Delaware's public policy clearly is to promote incorporation in Delaware and to provide respected courts for the resolution of business disputes involving Delaware corporations, I think that is a policy that is implemented through Delaware's state courts.  The federal system is not within the State's purview.  Thus, I think this factor is neutral.

This is not a diversity case, and thus knowledge of state law is irrelevant here.  This factor is neutral.  (D.I. 10 at 11; D.I. 16 at 19).

I have been struck recently by the difficulties in trying cases where everybody is coming from somewhere else.  *See Sprint Comms. Co. v. Charter Comms., Inc*., Civ. Act. No. 17-1734-RGA, D.I. 545 (D. Del. Sept. 2, 2020) (postponing trial where there would be "no one from

Delaware but me, court staff, and the jury"); *Baxalta Inc. v. Bayer Healthcare LLC*, Civ. Act.

No. 17-1316-RGA, D.I. 529 (D. Del. Aug. 12, 2020) (postponing trial where, "No witness is

from Delaware.").  While I am optimistic that the specific reason that required those trials to be

postponed will subside at some point, the postponements do support the common sense

proposition behind § 1404, which is that trying cases in distant locations can be inconvenient.

I note that I have considered *In re Link_A_Media Devices Corp.*, 662 F.3d 1221 (Fed.

Cir. 2011).[2]  I consider it because it is the one case from the Federal Circuit putting its gloss on

the controlling Third Circuit law.  There are two main differences between this case and

*Link_A_Media*.  First, in *Link_A_Media*, the plaintiff was not a Delaware corporation.  Here, one

of two Plaintiffs, asserting one of the eight patents, is a Delaware corporation.  Second, unlike

the *Link_A_Media* plaintiff, who had some connection to California, the plaintiffs here have no

connection to Washington.  (D.I. 18, ¶ 6).  Thus, the argument for transferring this case is not as

strong as it was in *Link_A_Media*.  The standard of review in *Link_A_Media* was "clear abuse of

discretion."  *Id.* at 1222.  I don't think it would be a clear abuse of discretion if I did not transfer

this case.  It probably would not even be an abuse of discretion.  But I think the balancing

suggests the better exercise of discretion would be to transfer this case to the Western District of

Washington, and thus I will enter an order to that effect.

---

[2] The Federal Circuit's numerous transfer cases arising from the Fifth Circuit are not controlling as the Federal Circuit interprets the law of the Circuit in which the District Court sits. *See In re Link_A_Media,* 662 F.3d at 1223.  The law of the two Circuits in regard to how to conduct a transfer analysis is different in a number of regards.  Of greatest relevance, "Fifth Circuit precedent clearly forbids treating the plaintiff's choice of venue as a distinct factor in the [transfer] analysis."  *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008).  As noted earlier, the Third Circuit treats the plaintiff's choice as a factor of "paramount importance."