UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NXP USA, INC., and NXP B.V., <br><br>  Plaintiffs, <br><br> v. <br><br> IMPINJ, INC., <br><br>  Defendant. | CASE NO. 2:20-cv-01503-JHC <br><br> ORDER |

This matter comes before the Court on Defendant Impinj's Motion for Leave to File Amended Answer.  Dkt. # 179.  Defendant previously sought leave to amend its complaint, on December 3, 2020, to add counterclaims concerning eight patents.  Dkt. # 63.  The Court denied the motion, finding the proposed amendment would be prejudicial.  Dkt # 79 (magistrate judge's ruling); Dkt. # 110 (district judge's ruling on Defendant's objection).  Defendant now seeks to add counterclaims of infringement of five claims from two patents, which survived *inter partes* review (IPR).  *Id.*  The two patents at issue are U.S. Patent No. 8,390,431 ("the '431 Patent") and U.S. Patent No 9,471,816 ("the '816 Patent").  Plaintiffs NXP USA, Inc. and NXP B.V. ("NXP") oppose the motion, arguing that Defendant fails to establish good cause and the addition of new

ORDER - 1

counterclaims at this stage in litigation would be prejudicial to them.  Dkt. # 184.  Having reviewed the motion and related filings, the Court DENIES the motion.

This case has been pending for nearly three years.  Trial is now scheduled for April 2023.

The parties agree that Federal Rule of Civil Procedure 15(a)(2) applies to this motion.[1]  Rule 15 states that district courts should "freely give leave" to amend a pleading "when justice so requires."  The Ninth Circuit has stated that the "'policy is to be applied with extreme liberality.'"  *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1160–61 (9th Cir. 2021) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)).  "'In determining whether leave to amend is appropriate, the district court considers the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility.'"  *Id.*  Whether there is prejudice to the opposing party "carries the most weight."  *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020).

---

[1] Plaintiffs contend that Federal Rule of Civil Procedure 16 also applies to this motion and that Defendant must show "good cause" for amendment.  *See* Fed. R. Civ. P. 16 ("A schedule may be modified only for good cause and with the judge's consent.").  Plaintiffs cite cases that state that when a party's requested amendment would necessarily affect the scheduling order, the party must establish good cause under Rule 16.  *See, e.g.*, *Lochridge v. City of Tacoma*, 315 F.R.D. 596, 599 (W.D. Wash. 2014) ("Lochridge's motion, if granted, necessarily requires modification of the scheduling order. . . . Good cause must be shown to justify any modification of the scheduling order.").  Defendant argues that Rule 16 does not apply because it is not seeking to modify the scheduling order.  It appears to the Court that modification of the scheduling order would be highly likely if it granted leave to amend.  Indeed, Defendant seems to acknowledge the risk.  *See* Dkt. # 179, Motion at 9 ("even if the Court ultimately believes that the schedule should be adjusted by a month or more to accommodate the five claims, that is a more reasonable approach than precluding Impinj from obtaining relief").  But the Court need not determine whether scheduling modifications are "necessary" or "inherent" because the Court concludes that Defendant's motion should be denied under Rule 15.  *Cf. Bowers v. Kletke*, No. C08-1768 RSM, 2010 WL 11527183, at *2 (W.D. Wash. July 21, 2010) ("While granting leave to amend may require extension of discovery deadlines as a practical matter, and thus indirectly affect a scheduling order, this possibility is more properly addressed under the prejudice prong of a Rule 15(a) analysis.  Thus the Court will apply Rule 15's liberal standard rather than Rule 16.").

ORDER - 2

A.  Prejudice

"'Prejudice,' in the context of a motion to amend, means 'undue difficulty in prosecuting a lawsuit as a result of a change of tactics or theories on the part of the other party.'" *Wizards of the Coast LLC v. Cryptozoic Ent. LLC*, 309 F.R.D. 645, 652 (W.D. Wash. 2015) (quoting *Deakyne v. Commissioners of Lewes*, 416 F.2d 290, 300 (3d Cir.1969)).  "Specifically, the Ninth Circuit has held that permitting a party to amend a pleading to add new claims would unduly prejudice the other party where the new claims 'would have greatly altered the nature of the litigation and would have required [the opposing party] to have undertaken, *at a late hour*, an entirely new course of defense.'" *Xyratex Tech., Ltd. v. Teradyne, Inc.*, No. CV0804545SJOPLAX, 2009 WL 10702551, at *5 (C.D. Cal. Apr. 10, 2009) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)) (emphasis added).  "In addition, the Ninth Circuit has found undue prejudice where an amendment would raise different legal theories and require proof of different facts such that additional discovery would have to be undertaken." *Id.*

Plaintiffs argue that amendment would prejudice them because it would essentially permit Defendant to start a patent infringement lawsuit from scratch at this late stage in the case and would increase complexity, require additional discovery, and cause delay in resolving the case.  The Court agrees that amendment would greatly alter the nature of the litigation and require Plaintiffs to undertake, at a late hour, an entirely new course of defense.  *See id.*

1.  Prejudice from added complexity

Defendant contends that the addition of its proposed counterclaims would not increase the complexity of this case because, since the case began, the overall number of in-suit claims

ORDER - 3

has narrowed and may narrow more, and because it seeks to raise only five claims.[2] Though addition of the proposed claims would result in the same total number of asserted patents that existed at the beginning of this case, that is not the only consideration for assessing increased complexity. Adding claims would add complexity to this case.

The parties contest how much the subject matter of the proposed patent claims overlap with the in-suit patent claims. Plaintiffs contend that addition of the counterclaims would add complexity[3] because the subject matter of the proposed patent claims is "markedly different from the subject matter in NXP's patents," and the counterclaims accuse different products. Dkt. # 184, Hendershot Decl. at 7. Plaintiffs state that some of the in-suit patents are "circuit patents" that relate to transistor level circuitry in the RFID integrated circuit chips and say that while the two proposed patents relate superficially to circuits, the similarities end there. Plaintiffs assert that the '431 patent relates to authentication of RFID tags and the '816 patent relates to RFID self-tuning techniques, and Plaintiffs emphasize that none of the in-suit patents relate to those subject areas. Defendant more broadly states, "Both parties design and sell integrated circuits (ICs) for ultra-high frequency RFID tags" and that claims from in-suit patents and claims from the proposed patents all relate to "circuits for such ICs." Dkt. # 189, Reply at 4. It appears to the Court that a subject matter distinction exists between the in-suit patents and the proposed

---

[2] Defendant emphasizes that this Court's prior denial of its first motion to amend to add counterclaims related to eight other patents depended solely on the complexity that would stem from adding eight patents to a case already involving eight patents. *See* Dkt. # 79. Thus, Defendants conclude, because it is seeking to add fewer claims, complexity is no longer an issue for the Court. But this is not a fair characterization of the Court's order. In response to Defendant's objections, the Court concluded that the order "inherently addressed prejudice to NXP." Dkt. # 110. Moreover, the analysis differs now; the passage of more than a year increases the potential for prejudice.

[3] Defendant contends that Plaintiff should be judicially estopped from claiming that adding the five claims from two patents would increase complexity when Plaintiffs added counterclaims asserting nine patents in the Western District of Texas. *See* 6:21-cv-00530-ADA, Dkt. # 15. But this argument, unsupported by law, is not well-taken because, in the other case, Plaintiffs asserted their counterclaims early-on in their initial answer. *Id.*

ORDER - 4

patents—the addition of which, would increase complexity. *Cricket Commc'ns, Inc. v. Hipcricket, Inc.*, No. C08-00908MJP, 2009 WL 426618, at *1 (W.D. Wash. Feb. 20, 2009) ("These claims will require legal briefing beyond the scope of the current litigation, and allowing them 'would inject an additional layer of complexity and delay into an already complex action.'" (quoting *Matsushita Elec. Indus. Co. v. CMC Magnetics Corp.*, No. C 06-04538 WHA, 2007 WL 127997, at *4 (N.D. Cal. Jan.12, 2007))); *cf. SanDisk Corp. v. STMicroelectronics Inc.*, No. C 04-4379 JF (RS), 2009 WL 1404689, at *3 (N.D. Cal. May 19, 2009) (granting leave to amend despite delay and where discovery was mostly complete because the two new patents were "very similar to the two patents-in-suit" and a trial date had not been set).

   2.   Prejudice from delay

Also, the proposed amendment could delay the timely resolution of this case, which was initiated in October 2019, was transferred to this Court in October 2020, and is headed to trial in April 2023.[4] *See Motor Works, LLC v. Safer Techs., Inc.*, No. C 08-03608 JW, 2010 WL 11485116, at *3 (N.D. Cal. Mar. 10, 2010) ("Prejudice is heightened when a plaintiff seeks to amend a complaint late in litigation"); *IXYS Corp. v. Advanced Power Tech., Inc.*, No. C 02-03942 MHP, 2004 WL 135861, at *3 (N.D. Cal. Jan. 22, 2004)[5] ("Indeed, the need for a party to conduct supplemental discovery or to consider a new line of legal argument are classic sources of prejudice that have regularly proven sufficient to defeat a motion for leave to amend."); *see*

---

[4] Defendant says that since NXP claimed the case would be ready for trial this December, and because trial has been set for April 2023, NXP cannot now claim that the counterclaims could not be addressed in those additional four months. But that conclusion does not necessarily follow. And indeed, Defendant acknowledges trial may be delayed for a month or more. Dkt. # 179, Motion at 9 ("Finally, even if the Court ultimately believes that the schedule should be adjusted by a month or more to accommodate the five claims, that is a more reasonable approach than precluding Impinj from obtaining relief.").

[5] The court in *IXYS Corp.*, ended up granting amendment on judicial economy grounds because the in-suit patent was a "parent" of the patent asserted in the counterclaim and "the majority of the claim terms in question" were "repeated" in the counterclaimed patent. 2004 WL 135861, at *3, *5.

ORDER - 5

*also Bowers v. Kletke,* No. C08-1768 RSM, 2010 WL 11527183, at *4 (W.D. Wash. July 21, 2010) ("In its prior rulings, this Court has concluded that prejudice to Defendants can be presumed from unreasonable delay.").

    a.  Delay from additional contentions

Addition of counterclaims would require invalidity, infringement, and non-infringement contentions, which have already been completed for the in-suit patents. Defendant argues that the invalidity contention process would be non-existent or greatly narrowed by the fact that Plaintiffs would be estopped from raising invalidity arguments they could have raised during IPRs. *See* 35 U.S.C. § 315(e)(2) ("The petitioner in an inter partes review of a claim in a patent . . . that results in a final written decision . . . may not assert . . . in a civil action . . . that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that inter partes review."). But while the issues may be narrower, it does not mean this process can be dispensed with in its entirety.

    b.  Delay from additional claim construction

Amendment is highly likely to require additional claim construction. The local patent rules set forth a 210-day schedule from the date of the scheduling conference to the date of the responsive claim construction brief. Local Patent Rules 120–21, 130–134. Defendant contends that it "sees no need to interpret any terms in the five patent claims at issue, and is prepared to waive any claim construction proceedings other than, as necessary, in the context of summary judgment." Dkt. # 189, Reply at 3. This one-sided contention, absent some sort of agreement between both parties about how the claim terms should be construed, seems to ring hollow. Defendant cannot unilaterally assert that claim construction will be unnecessary. While Defendant says it would waive claim construction proceedings, it does not contend it would waive any right to dispute as to claim construction. Moreover, in its motion, Defendant

acknowledges that "the Court might need to construe some disputed claim terms." Dkt. # 179, Motion at 13.

        c.      Delay from additional discovery

Amendment would require additional discovery. *See Xyratex Tech., Ltd.*, 2009 WL 10702551, at *5 (denying motion to amend in part because supplemental discovery would be needed to litigate the counterclaims). Defendant contends that limited discovery would be needed because Plaintiffs have already deposed five out of the six named inventors "on technology closely related to what is claimed" in the '431 and '816 patents in the California litigation. Dkt. # 189, Reply at 3–4. But that simply is not equivalent to deposing those witnesses on the two patents themselves in the context of this litigation. *See Bowers*, 2010 WL 11527183, at *4 ("It is true that much of the discovery for an SCA claim in this case will overlap with discovery for the Wiretap Act claim . . . . But the Wiretap Act and the SCA require distinct elements that require divergent expert research."). The discovery deadline of October 28, 2022 would most likely have to be modified to accommodate the additional discovery.

        3.      Prejudice precludes amendment

Defendant contends that Plaintiffs cannot claim they would suffer prejudice because Plaintiffs knew about the two patents for more than three years, as Defendant originally asserted the patents in the California case before dismissing them. Defendant also notes that Plaintiffs litigated the two patents during the IPRs. But being aware of a potential patent infringement claim is not equivalent to actively litigating it. Additionally, the claim language for the '816 patent was amended due to IPR, rendering any awareness of the patent's prior claim language unhelpful. Finally, litigating invalidity during IPR is not like litigating an infringement claim in this forum.

The addition of Defendant's proposed counterclaims would prejudice Plaintiffs by changing the scope of the litigation at a late hour.[6] *Xyratex Tech., Ltd.*, 2009 WL 10702551, at *5 ("The counterclaims, which are based on complex patents involving subject matter and claims distinct from the Xyratex Patent, would 'entirely change the focus' and 'scope of this litigation,' putting Xyratex on the defensive after the case has been pending for months."). Accordingly, the Court concludes that denial of Defendant's motion is appropriate.

B.  Judicial Economy

Defendant contends that judicial economy would be served by trying the counterclaims together with the in-suit claims. While judicial economy is not one of the enumerated factors above, courts consider it in addressing a motion for leave to amend. *See e.g.*, *PureCircle USA Inc. v. SweeGen, Inc.*, No. SACV181679JVSJDEX, 2020 WL 1060364, at *2 (C.D. Cal. Feb. 18, 2020) ("judicial economy is served by allowing amendment"); *Microsoft Corp. v. TiVo, Inc.*, No. 10-CV-00240-LHK, 2011 WL 570157, at *2 (N.D. Cal. Feb. 14, 2011).

As discussed above, there are subject matter differences between the proposed patents and the in-suit patents and they accuse different products. As a result, judicial economy does not outweigh the prejudice resulting from adding the proposed counterclaims to this case.[7] *See Alzheimer's Inst. of Am. v. Elan Corp. PLC*, 274 F.R.D. 272, 278 (N.D. Cal. 2011) (finding

---

[6] Plaintiffs do not allege futility of amendment, so the Court does not address it. Plaintiffs do allege that Defendant acted in bad faith in moving to amend but the Court, having already determined prejudice, need not address alleged bad faith. *Alzheimer's Inst. of Am. v. Elan Corp. PLC*, 274 F.R.D. 272, 277–78 (N.D. Cal. 2011) ("the Court need not find bad faith, because denial of leave to amend is proper based on the other factors."). Plaintiffs also set forth a strong argument of undue delay, but the Court need not reach the issue as it has determined that amendment would prejudice Plaintiffs.

[7] The Court also notes that Defendant is not prevented from raising its proposed counterclaims in a separate lawsuit. Defendant does not contend the counterclaims are compulsory or that it would be otherwise precluded from raising the counterclaims elsewhere, it instead argues that judicial economy is served by trying all claims together. *See Xyratex Tech., Ltd.*, 2009 WL 10702551, at *6 ("denial of Teradyne's Motion 'causes no prejudice to [Teradyne], for [it] can simply bring [its] new infringement allegations against [Xyratex] in a separate action.'" (quoting *Magnesystems, Inc. v. Nikken, Inc.*, 933 F. Supp. 944, 953 (C.D. Cal. 1996))).

judicial economy outweighed by, among other things, delay in moving for amendment and concern that amendment would "de-rail the existing claim construction schedule").

C.     Conclusion

The Court DENIES Defendant's motion for leave to amend. Dkt. # 179.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 11th day of August, 2022.

*John H. Chun* (signature)
John H. Chun
United States District Judge