UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NXP USA, INC., and NXP B.V., <br><br> Plaintiffs, <br><br> v. <br><br> IMPINJ, INC., <br><br> Defendant. | CASE NO. 2:20-cv-01503-JHC <br><br> ORDER DENYING MOTION TO AMEND INVALIDITY CONTENTIONS |

# I

## INTRODUCTION

Pending before the Court is Defendant Impinj, Inc.'s motion (Dkt. # 253) to amend its invalidity contentions for U.S. Patent Number 7,795,951 (the '951 Patent). *See also* Dkt. # 264 (NXP's response); Dkt. # 264 (Impinj's reply). Impinj seeks to broaden its invalidity contentions to encompass additional prior art: the Monza 3 chip and the TC1 test chip. Dkt. # 253 at 4.

For the reasons below, the Court DENIES the motion.

# II

## DISCUSSION

Impinj seeks to incorporate two additional pieces of prior art into its invalidity contentions: the Monza 3 chip and the TC1 test chip. *See generally id.* Impinj contends that

ORDER DENYING MOTION TO AMEND INVALIDITY CONTENTIONS - 1

under the Court's construction of the '951 Patent, this prior art renders the '951 Patent invalid because it predates the patent's priority date. Both the Monza 3 chip and the TC1 test chip were developed and made by Impinj.

Impinj argues that it was diligent in seeking to amend its invalidity contentions. Impinj says that the Court adopted neither party's construction of three terms in the '951 Patent. It suggests that, in such circumstances, its diligence should be measured from the date of the Court's claim construction order. As measured from that date, Impinj says that it demonstrated diligence: It alerted NXP of its intent to amend 12 days after the Court's claim construction order and filed the present motion less than a month after that order. And Impinj asserts that NXP would not be prejudiced by amendment because NXP still has adequate time to conduct discovery and trial is still several months away.

NXP makes various arguments in response, but its basic contention boils down to this: Nothing in the Court's claim construction order materially alters the parties' understanding of the disputed terms, and thus Impinj was on notice that this prior art was potentially relevant to an invalidity argument at the time the parties submitted their claim construction briefs. *See* Dkt. # 264. NXP thus suggests that Impinj's diligence should be measured from roughly September 2021, around the time when the parties exchanged their claim construction briefs. Measured from around that time, NXP says, Impinj's request to amend well over a year later does not satisfy the diligence requirement. NXP also says that allowing amendment would be prejudicial: The motion to amend was filed less than a month before the close of discovery, depriving NXP of the opportunity to fully respond to Impinj's new invalidity theory.

A.     Legal Standards

Local Patent Rule 124 allows a party to amend its invalidity contentions "by order of the Court upon a timely showing of good cause." "[T]his District's Local Patent Rules were

'designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed.'" *REC Software USA, Inc. v. Bamboo Sols. Corp.*, No. C11-0554JLR, 2012 WL 3527891, at *2 (W.D. Wash. Aug. 15, 2012) (quoting *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 n.12 (Fed. Cir. 2006)). "[Such] rules thus seek to balance the right to develop new information in discovery with the need for certainty as to the legal theories." *O2 Micro*, 467 F.3d at 1366 (concerning local patent rules in the Northern District of California).

"In determining whether good cause exists, courts consider if the moving part[y] was diligent in amending its contentions. If the moving party shows diligence[,] the court must consider if granting leave to amend will prejudice the non-moving party." *Treehouse Avatar LLC v. Valve Corp.*, No. C17-1860-RAJ, 2020 WL 2800723, at *1 (W.D. Wash. May 29, 2020) (citing *REC Software*, 2012 WL 3527891, at *2–3). Thus, courts consider two factors when evaluating whether to permit amendment: (1) the moving party's diligence, and (2) the prejudice to the non-moving party. *Wizards of the Coast LLC v. Cryptozoic Ent. LLC*, 309 F.R.D. 645, 650 (W.D. Wash. 2015).

B.  Diligence

A party seeking to amend its invalidity or infringement contentions must show diligence. The moving party bears the burden of establishing diligence. *REC Software*, 2012 WL 3527891, at *2. In assessing diligence, courts "place emphasis on whether the moving party's actions comport with the purpose behind the federal discovery rules in diligently searching for prior art and developing new theories of invalidity and infringement and diligently providing any new-found prior art or new theories to opposing parties." *Id.* at *3. "While courts . . . have not applied a uniform rule, review of all of the cases reveals that, regardless of the rule applied, diligence determinations are necessarily fact intensive inquiries and must be determined based on

ORDER DENYING MOTION TO AMEND INVALIDITY CONTENTIONS - 3

the individual facts of each case." *Asia Vital Components Co. v. Asetek Danmark A/S*, No. 16-CV-07160-JST, 2018 WL 3108927, at *1 (N.D. Cal. June 25, 2018) (quoting *Word to Info Inc. v. Facebook Inc.*, No. 15-CV-03485-WHO, 2016 WL 6276956, at *4 (N.D. Cal. Oct. 27, 2016), *aff'd*, 700 F. App'x 1007 (Fed. Cir. 2017)).

Courts in this district do not appear to have squarely addressed how to measure a party's diligence.[1] But courts in the North District of California—to which this Court has frequently looked for guidance in applying Local Patent Rule 124[2]—often (though not always) apply two different measures of diligence following claim construction, depending on whether the court adopts a claim construction proposed by the parties or adopts its own construction.

"[M]any judges [in the Northern District of California] have determined that 'where the court adopts the opposing party's proposed claim construction, the moving party's diligence, without which there is no good cause, is measured from the day the moving party received the proposed constructions, not the date of issuance of the Court's claim construction opinion.'" *Asia Vital Components*, 2018 WL 3108927, at *2 (quoting *Word to Info*, 2016 WL 6276956, at *4). *But see id.* (noting that some courts have rejected this rule). When a court adopts a proposed construction put forward by a party, each party is "aware of the risk that the Court could adopt" that construction. *Verinata Health, Inc. v. Sequenom, Inc.*, No. C 12-00865 SI, 2014 WL 789197, at *2 (N.D. Cal. Feb. 26, 2014). In such cases, courts in the Northern District of California have concluded that a reasonably diligent litigant could be expected to amend its

---

[1] And as discussed below, the Court need not fully decide this question.
[2] *See, e.g.*, *REC Software*, 2012 WL 3527891, at *2 n.4 (noting that "the court finds cases interpreting the local patent rules for the Northern District of California helpful because of the similarity between the language of the local patent rules" for each district); *Wizards of the Coast*, 309 F.R.D. at 650 n.3 (same).

ORDER DENYING MOTION TO AMEND INVALIDITY CONTENTIONS - 4

contentions to account for the proposed constructions shortly after the parties swap claim construction positions.

Similarly, a court's adoption of the moving party's *own* construction, without more, will not typically constitute good cause to amend; the moving party should, of course, anticipate that the court may adopt its proffered construction and develop its contentions accordingly. *Cf.* Local Patent Rule 124 (noting that "a claim construction by the Court *different from that proposed by the party seeking amendment*" may constitute good cause (emphasis added)).

But Northern District of California courts often apply a different rule often when a court adopts its *own* construction. When a court "adopts its own construction," it will "often follow the 'date-of-order' rule," measuring diligence from the date on which the court issues its claim construction order. *Asia Vital Components*, 2018 WL 3108927, at *2; *see also Word to Info*, 2016 WL 6276956, at *4. This is because a party cannot be expected to anticipate any possible construction that a Court may adopt. *Cf. GPNE Corp. v. Apple Inc.*, No. 5:12-cv-02885-LHK-PSG, 2013 WL 6157930, at *2 (N.D. Cal. Nov. 22, 2013) (A party "could not have anticipated the full scope of the amendments needed without the court's claims construction order before it.").

Impinj argues that its diligence should be measured from the date of the Court's claim construction order because the Court crafted its own construction for each of three disputed terms in the '951 Patent. Dkt. # 253. Impinj says that that the Court's construction was "materially different and broader from what Impinj proposed," and thus insists that its timely motion to amend (filed only a few weeks after the Court's claim construction order) should be granted. *Id.* at 5. Impinj asserts that the Court's claim construction rendered the prior art material.

ORDER DENYING MOTION TO AMEND INVALIDITY CONTENTIONS - 5

The Court need not (and does not) decide whether to adopt the Northern District of California's two-track approach to measuring diligence. Nor does the Court decide whether a party's diligence should be measured from the swapping of claim constructions when a court adopts the *non-moving* party's construction. As described below, the Court's construction of the key disputed term was not materially different from Impinj's *own* proposed construction. Impinj could have anticipated that the Court would adopt a variation on its construction. Thus, Impinj could have amended its contentions as early as September 2021 when it submitted its claim construction briefing. Its motion to amend—filed well over a year later—does not show diligence.

As an initial matter, Impinj provides no explanation about how the Court's construction of two terms in the '951 Patent—"regulating an output voltage at the output of the input level regulator to a continuous range of voltage levels" and "regulated clock"—render the prior art relevant. The only argument Impinj offers is that the Court's construction of the term "proportional" made the prior art relevant. Accordingly, the Court's analysis focuses only on whether the Court's construction of that term altered the relevance of the prior art.

Impinj proposed that the term "proportional" be construed to mean "a fixed or constant ratio to another value." Dkt. # 135 at 27. NXP proposed that the term be given its plain and ordinary meaning. Dkt. # 137 at 28. Ultimately, the Court construed the term to mean "a constant ratio to another value that can be adjusted at different times." Dkt. # 247 at 47.

The Court did not adopt the construction of either party: While it largely adopted Impinj's proposed construction, it omitted the word "fixed" and added the phrase "that can be adjusted at different times" to the end of the construction. But this alone does not justify Impinj's decision to seek amendment only after the Court's claim construction order.

First, while the Court adopted its own construction of the term "proportional," its construction closely tracks Impinj's understanding of the disputed term. The Court made a modest change to Impinj's construction (omitting the redundant term "fixed"), and then added the phrase "that can be adjusted at different times" to the end of Impinj's proposed construction. To be sure, the addition of the phrase "that can be adjusted at different times" might ordinarily constitute a material change that could affect the relevance of prior art and justify granting leave to amend. But the Court added that phrase based on a concession *in Impinj's brief*. In its reply brief, Impinj states: "Impinj agrees that the ratio *can be adjusted at different times*." Dkt. # 149 at 15 (emphasis added). Thus, the Court's construction was consistent with Impinj's understanding of the term, merely combining language from Impinj's formally proposed construction with language from its brief. Based on its own proposed construction and briefing, Impinj was on notice that the Court could adopt a construction like the one it did.

A court's adoption of its own construction does not automatically justify allowing a party to amend its contentions. *See Word to Info*, 2016 WL 6276956, at *4 (observing that the "level and manner of modification is important" to the analysis). When, as here, a court's construction is not materially different from that proposed by the *moving* party, that party cannot credibly claim that it was the court's order that rendered the prior art relevant. *See id.* at *4–5 (concluding that the date-of-order rule did not apply because the "modification was not material"); *Asia Vital Components*, 2018 WL 3108927, at *2 (measuring diligence from the date the moving party received the opposing party's proposed constructions "because the Court did not significantly or materially modify the parties' proposed terms. The Court simply combined parts of each party's proposed constructions."). Impinj had ample opportunity to amend its invalidity contentions to align with its own understanding of the term "proportional" but waited until after the Court issued its claim construction order to do so.

ORDER DENYING MOTION TO AMEND INVALIDITY CONTENTIONS - 7

Second, Impinj's assertion that the Court's interpretation altered the materiality of the prior art is conclusory. Impinj states that "neither the accused products, or the MO3/TC1 development prior art would have practiced the claims under Impinj's proposed construction, but under at least NXP's view of the Court's construction the MO3/TC1 development became relevant because it invalidates to the same extent the accused products practice the claims." Dkt. # 253 at 10. But at no point does Impinj attempt to explain how the Court's construction affected the materiality of the prior art. Impinj says that unlike in other cases, it has "not made th[e] admission" that the prior art would have been relevant under both its proposed constructions and the Court's. Dkt. # 266 at 5. But at the same time, it does not explain how the Court's construction made the prior art any more material than it was before.

Accordingly, the Court's construction of the terms in the '951 Patent does not justify Impinj's late attempt to amend its invalidity contentions. Impinj has been aware of this prior art throughout the entire litigation. After all, Impinj made the prior art. *See In re Koninklijke Philips Patent Litig.*, No. 18-CV-01885-HSG, 2019 WL 2359206, at *2 (N.D. Cal. June 4, 2019) ("A party's failure to discover materials in its own possession sooner leans in favor of finding that it was not diligent."). Impinj could have sought leave to amend at any point after it filed its proposed claim construction. Impinj's failure to do so for well over a year does not constitute diligence.

C.   Prejudice

When evaluating a motion for leave to amend invalidity or infringement contentions, courts also consider the prejudice of allowing amendment to the non-moving party. "Prejudice is typically found when amending contentions stand to disrupt the case schedule or other court orders." *Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, No. 14-cv-00876-RS (JSC), 2016 WL 2855260, at *3 (N.D. Cal. May 13, 2016). "An upcoming discovery deadline tends to loom large

ORDER DENYING MOTION TO AMEND INVALIDITY CONTENTIONS - 8

in the prejudice analysis." *Id.*, at *7; *see also EON Corp. IP Holdings LLC v. Aruba Networks, Inc.*, No. 12-cv-01011-JST, 2013 WL 6001179, at *3 (N.D. Cal. Nov. 12, 2013) (denying motion to amend due to prejudice to the opposing party because "[f]act discovery closes shortly").

Here, NXP would suffer undue prejudice if the Court were to allow Impinj's amendment. Impinj's motion was filed less than one month before the close of discovery; the motion was not fully briefed until December 23 (just a week before discovery closed); and the Court is ruling on this motion after the discovery cutoff. NXP observes that its response to Impinj's new invalidity theory hinges on factual questions, including whether Impinj abandoned, suppressed, or concealed its prior art. *See* Dkt. # 264 at 16.

The Court recognizes that the case schedule—in which claim construction occurred near the end of discovery—may have made such prejudice difficult to avoid. Nevertheless, this does not take away from the fact that NXP would suffer prejudice if amendment were permitted.

Allowing Impinj to amend its invalidity contentions would likely require modification of the case schedule, including by allowing additional discovery and an opportunity to develop expert witnesses. The prejudice to NXP serves as an independent reason for denying leave to amend.

### III
#### Conclusion

For the reasons above, the Court DENIES Impinj's motion (Dkt. # 253) for leave to amend its invalidity contentions.

Dated this 17th day of January, 2023.

John H. Chun
United States District Judge