UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NXP USA, INC., and NXP B.V., <br><br> Plaintiffs, <br><br> v. <br><br> IMPINJ, INC., <br><br> Defendant. | CASE NO. 2:20-cv-01503-JHC <br><br> ORDER MODIFYING CLAIM CONSTRUCTION |

# I.

## INTRODUCTION

This matter comes before the Court sua sponte. On November 4, 2022, the Court issued a claim construction order. *See* Dkt. # 247. The Court construed several terms in U.S. Patent Number 7,347,097 ("the '097 Patent"). Among those was the term "voltage-raising means that are arranged to raise the voltage value of the control signal." The Court construed the term to be a means-plus-function term. Dkt. # 247 at 33–39. The Court stated that the function was "raising the voltage value of the control signal," and the corresponding structure was "a charge pump or the float-based structure described at 2:43–48 of the '097 Patent" and equivalents thereof. *Id.*

ORDER MODIFYING CLAIM
CONSTRUCTION - 1

After developing a deeper understanding of the technology at issue and Federal Circuit case law, the Court finds it necessary to modify that construction. The Court concludes that the "voltage-raising means" term is not a means-plus-function term, and that it should be construed as "a circuit that raises the voltage value of the control signal."

## II.

### LEGAL PRINCIPLES

A.   General Claim Construction Principles

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)); *see also Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("[W]e look to the words of the claims themselves . . . to define the scope of the patented invention.").

When construing a patent claim, the words of the claim "are generally given their ordinary and customary meaning." *Phillips*, 415 F.3d at 1312 (quoting *Vitronics*, 90 F.3d at 1582). The "ordinary and customary meaning" of a term is the meaning of the words as understood by a person of ordinary skill in the art ("POSITA") at the time of the invention. *Id.* at 1313. Although words in a claim are generally given their ordinary meaning, the Federal Circuit has recognized "two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). For the patentee's unique definition to govern, the patentee must "clearly set forth a definition of the disputed claim term other than its plain and ordinary meaning. *Id.* (internal quotation marks and citation omitted). The "standard for disavowal of

claim scope is similarly exacting." *Id.* at 1366. "Absent a clear disavowal in the specification or the prosecution history, the patentee is entitled to the full scope of its claim language." *Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1358 (Fed.Cir.2004).

To determine the meaning of a disputed term, courts mainly rely on "intrinsic" evidence: the claim language, the written description in the specification, and the patent's prosecution history. *Phillips*, 415 F.3d at 1311–17. A court's analysis begins with the language in the claims. *See id.* at 1314; *Innova/Pure Water*, 381 F.3d at 1116 ("[C]laim construction analysis must begin and remain centered on the claim language itself."). But claim terms are not to be read in a vacuum. Rather, claims "are part of a fully integrated written instrument . . . consisting principally of a specification that concludes with the claims." *Phillips*, 415 F.3d at 1315 (citation and internal quotation marks omitted); *see also id.* at 1313. The specification is particularly important to claim construction and is often "the single best guide to the meaning of a disputed term." *Id.* at 1315 (quoting *Vitronics*, 90 F.3d at 1582). This is because the specification "aids in ascertaining the scope and meaning of the claims." *Id.* (quoting *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985)). Thus, courts "rely heavily" on the specification. *Id.* at 1317.

Courts often struggle when using the specification to guide the claim construction inquiry. *Id.* at 1323. On the one hand, courts rely on the specification to help determine the meaning of a disputed term. *Id.* On the other hand, the Federal Circuit has repeatedly warned that a court may not read limitations from the specification into the claim. *Id.*; *see also Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1347 (Fed. Cir. 1998) (noting that it is a "well-established principle that a court may not import limitations from the written description into the claims"); *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1340 (Fed. Cir. 2001) (observing that one of the "cardinal sins of patent law" is "reading a limitation from the

ORDER MODIFYING CLAIM
CONSTRUCTION - 3

written description into the claims"). The "distinction between using the specification to interpret the meaning of a claim and importing limitations from the specification into the claim can be a difficult one to apply in practice." *Phillips*, 415 F.3d at 1323. But the Federal Circuit has explained that "the line between construing terms and importing limitations can be discerned with reasonable certainty and predictability if the court's focus remains on understanding how a person of ordinary skill in the art would understand the claim terms." *Id.*

In addition to considering intrinsic evidence (like the claim language and specification), courts may also rely on "extrinsic" evidence. Extrinsic evidence "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370, (1996) (citation omitted). While extrinsic evidence may be useful, it is generally given less weight than intrinsic evidence. *Phillips*, 415 F.3d at 1317.

The construction of a patent's claims is a question of law to be decided by the court. *Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 321 (2015); *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390 (1996).

B.  Principles for Means-Plus-Function Claims

Under 35 U.S.C.§ 112, ¶ 6 (now codified at 35 U.S.C. § 112(f)),[1] claims may be drafted in a "means-plus-function" format in which the claim "recites a function to be performed rather than definite structure or materials for performing that function." *Lockheed Martin Corp. v.*

---

[1] The America Invents Act ("AIA") amended and reorganized section 112, moving 35 U.S.C. 112, ¶ 6 to 35 U.S.C. § 112(f). But the AIA did not substantively change the means-plus-function portion of the statute. Because the patents at issue were filed before the AIA took effect, this order refers to the pre-AIA version of Section 112. *See Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1343 n.2 (Fed. Cir. 2015) (en banc).

ORDER MODIFYING CLAIM
CONSTRUCTION - 4

*Space Sys./Loral, Inc.*, 324 F.3d 1308, 1318 (Fed. Cir. 2003) (citing 35 U.S.C. § 112, ¶ 6). By allowing inventors to draft claims in this manner,

> Congress struck a balance in allowing patentees to express a claim limitation by reciting a function to be performed rather than by reciting structure for performing that function, while placing specific constraints on how such a limitation is to be construed, namely, by restricting the scope of coverage to only the structure, materials, or acts described in the specification as corresponding to the claimed function and equivalents thereof.

*Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1347 (Fed. Cir. 2015) (en banc).

Interpreting a means-plus-function limitation is a multi-step process. A court must first determine whether the term is drafted in a means-plus-function format such that § 112, ¶ 6 applies. *MTD Prod. Inc. v. Iancu*, 933 F.3d 1336, 1344 (Fed. Cir. 2019); *Williamson*, 792 F.3d at 1348. The presence of the word "means" in a claim creates a rebuttable presumption that the claim is governed by § 112, ¶ 6. *See Egenera, Inc. v. Cisco Sys., Inc.*, 972 F.3d 1367, 1372 (Fed. Cir. 2020) ("We presume that claim terms with the word 'means' invoke § 112(f)"); *Williamson*, 792 F.3d at 1348. But courts must not reflexively "evaluate[] form over substance when evaluating whether a claim limitation invokes § 112, para. 6." *Williamson*, 792 F.3d at 1348. The Federal Circuit has explained:

> In making the assessment of whether the limitation in question is a means-plus-function term subject to the strictures of § 112, para. 6, our cases have emphasized that the essential inquiry is not merely the presence or absence of the word "means" but whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure.

*Id.* (citation omitted); *see also MTD Prods.*, 933 F.3d at 1344 ("As part of this step, we consider whether the claim limitation connotes 'sufficiently definite structure' to a person of ordinary skill in the art."). "To determine whether a claim recites sufficient structure, it is sufficient if the claim term is used in common parlance or by persons of skill in the pertinent art to designate structure, even if the term covers a broad class of structures and even if the term identifies the

ORDER MODIFYING CLAIM
CONSTRUCTION - 5

structures by their function." *Skky, Inc. v. MindGeek, s.a.r.l.*, 859 F.3d 1014, 1019 (Fed. Cir. 2017) (citation and quotation marks omitted); *see also MTD Prods.*, 933 F.3d at 1344; *Dyfan, LLC v. Target Corp.*, 28 F.4th 1360, 1365–66 (Fed. Cir. 2022).

### III.

### DISCUSSION

A.    Background on the '097 Patent

Many data carriers contain storage systems used to store information temporarily. These carriers can, for example, temporarily store an indication of successful communication with a communication station. Dkt. # 137 at 21. The information is stored and represented "by a value of an information voltage that arises at the capacitor." '097 Patent, 1:45–47. The '097 Patent identifies a problem in the prior art: The information voltage would continuously decline due to "unavoidable leakage currents in the circuit." *Id.* at 1:62–2:1. This decline in voltage would lead to an "unsatisfactory situation" because the information was "no longer able to be evaluated after only a short period of time." *Id.* at 2:2–7.

The '097 Patent describes an invention that purports to solve this problem. The invention described by the '097 Patent provides "a substantially longer period of time during which the stored information can be ascertained with high reliability." *Id.* at 2:34–36. This also allows the information to remain accessible if a brief supply-voltage failure occurs. *Id.* at 2:35–42. The patent achieves this in part by adding a "voltage-raising means" to the "information-voltage generating means." *Id.* at 2:13–23; *see also* Dkt. # 135 at 17.

The '097 Patent describes a data carrier that temporarily stores information capacitively. '097 Patent, 1:1–18. The information is represented by the value of an "information voltage," which is produced by "information-voltage generating means." *Id.* The specification describes an embodiment in which the "information-voltage generating means" receive a "control signal"

and are further comprised of a "charging-current generating stage," a "voltage-raising means," and a voltage-limiting means. *Id.* at 3:60–4:14.

Claim 1 of the '097 Patent exemplifies the patent's use of the "voltage-raising means" term. That claim describes "information-voltage generating means . . . that are arranged to generate the information voltage by using the control signal, characterized in that the information-voltage generating means have *voltage-raising means that are arranged to raise the voltage value of the control signal*." '097 Patent, 8:66–9:5 (emphasis added).

The parties asked the Court to construe the term "voltage-raising means that are arranged to raise the voltage value of the control signal."  In its initial claim construction order, the Court construed the term to be a means-plus-function term.  Dkt. # 247 at 33–39.  The Court stated that the function was "raising the voltage value of the control signal," and the corresponding structure was "a charge pump or the float-based structure described at 2:43–48 of the '097 Patent" and equivalents thereof.  *Id.*

B.     Modification of a Court's Construction

The Court finds it appropriate to revisit its prior construction.  The Federal Circuit permits courts to modify claim construction throughout litigation: "[Courts] may engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves.  This is particularly true where issues involved are complex, either due to the nature of the technology or because the meaning of the claims is unclear from the intrinsic evidence." *Jack Guttman, Inc. v. Kopykake Enterprises, Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002) (citation omitted); *see also Conoco, Inc. v. Energy & Env't Int'l, L.C.*, 460 F.3d 1349, 1359 (Fed. Cir. 2006) ("[A] district court may engage in claim construction during various phases of litigation, not just in a *Markman* order.").  The Federal Circuit has affirmed a district court's sua sponte modification of a claim construction decision in

a summary judgment order. *See Level Sleep LLC v. Sleep No. Corp.*, No. 2020-1718, 2021 WL 2934816, at *3 (Fed. Cir. July 13, 2021) ("[A] district court may (and sometimes must) revisit, alter, or supplement its claim constructions . . . to the extent necessary to ensure that final constructions serve their purpose of genuinely clarifying the scope of claims for the finder of fact." (quoting *In re Papst Licensing Digit. Camera Pat. Litig.*, 778 F.3d 1255, 1261 (Fed. Cir. 2015)); *id.* ("[T]he district court was well within its power to clarify, supplement, and even alter its construction").

With the benefit of additional briefing about circuit technology, greater understanding of the way a POSITA would discuss the relevant circuit components, and increased familiarity with Federal Circuit case law, the Court concludes that modification of its claim construction is appropriate and necessary. The Court no longer believes that this term is a means-plus-function term governed by § 112, ¶ 6. And while the Court initially believed that the "voltage-raising means" term should be construed similarly to the "information-voltage generating means" term (another term in the '097 Patent that the Court construed as a means-plus-function limitation), the Court now understands that the "voltage-raising means" term conveys structure in a way that "information-voltage generating means" does not. As explained below, the Court understands the "voltage-raising means" term to refer to a sufficiently definite class of structures: circuit components that raise a voltage.

C.      Revised Construction of the "voltage-raising means" Term

During claim construction, the parties disputed the meaning of the term "voltage-raising mean that are arranged to raise the voltage value of the control signal." The parties disagreed about whether it was a means-plus-function term subject to § 112, ¶ 6. Impinj said that the term is governed by § 112, ¶ 6. Dkt. # 135 at 21. NXP disagreed, arguing that the term be given its plain and ordinary meaning, which it interpreted to be "a circuit that raises the voltage value of

ORDER MODIFYING CLAIM
CONSTRUCTION - 8

the control signal." Dkt. # 137 at 24. While the Court initially sided with Impinj on this question, it now believes NXP has the better argument. Accordingly, the Court now holds that the term is not subject to § 112, ¶ 6, and construes the term to mean "a circuit that raises the voltage value of the control signal."

The term includes the word "means," which creates a presumption that the limitation is a means-plus-function claim subject to § 112, ¶ 6. *Egenera*, 972 F.3d at 1372. But the Federal Circuit has cautioned that courts must not reflexively "evaluate[] form over substance when evaluating whether a claim limitation invokes § 112, para. 6." *Williamson*, 792 F.3d at 1348. The Federal Circuit has explained:

> In making the assessment of whether the limitation in question is a means-plus-function term subject to the strictures of § 112, para. 6, our cases have emphasized that the essential inquiry is not merely the presence or absence of the word "means" but whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure.

*Id.* (citation omitted).

And importantly, "[t]o determine whether a claim recites sufficient structure, it is sufficient if the claim term is used in common parlance or by persons of skill in the pertinent art to designate structure, *even if the term covers a broad class of structures and even if the term identifies the structures by their function*." *Skky*, 859 F.3d at 1019 (emphasis added) (citation and quotation marks omitted). That is, "a claim term 'need not connote a single, specific structure,' and may instead 'describe a class of structures' and still recite 'sufficiently definite structure' to not invoke § 112 ¶ 6." *Dyfan*, 28 F.4th at 1365–66.

The Court concludes that a POSITA would understand the "voltage-raising means" term as referring to sufficiently definite structure. The term refers to the class of *circuit components* (tangible structure) used to raise the voltage within a circuit. *Cf. Inventio AG v. ThyssenKrupp Elevator Americas Corp.*, 649 F.3d 1350, 1358 (Fed. Cir. 2011) ("In past cases, we have

ORDER MODIFYING CLAIM
CONSTRUCTION - 9

concluded that a claimed 'circuit,' coupled with a description of the circuit's operation in the claims, connoted sufficiently definite structure to skilled artisans to avoid the application of § 112, ¶ 6." (*overruled on other grounds by Williamson*, 792 F.3d 1339)); *Apex Inc. v. Raritan Comput., Inc.*, 325 F.3d 1364, 1373–74 (Fed. Cir. 2003) (holding that even the term "circuit" "itself connotes some structure").  The language in the claim not only limits the types of circuits that qualify (only circuit components that raise a voltage), but also provides some rudimentary explanation of the way these voltage-raising components interface with the rest of the circuit (connected in some way to the control signal).

As Dr. Madisetti explained, "a POSITA would have understood," for example, "that voltage values could be raised using a charge pump or a voltage multiplier that was well known in the art" Dkt. # 137-4 at 41.[2]  No doubt, other voltage-raising components exist, too, as the Court has learned throughout this litigation.  But a term can convey adequate structure even if it covers a "class of structures." *Skky*, 859 F.3d at 1019 (citation omitted).  Here, the term does not describe an infinitely malleable and open-ended category of any device or apparatus, however conceived, that could raise a voltage.  Rather, the term connotes a finite list of possible structures, limited only to certain *circuit components* (like a charge pump or voltage multiplier).  Simply put, there are known circuit components that a POSITA might colloquially call "voltage raisers" or "voltage-raising" components.  This is enough to convey structure because it serves as a *name* for a type of structure.  *Williamson*, 792 F.3d at 1349 ("The standard is whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure.").

---

[2] Impinj did not submit a competing expert declaration.  While the Court initially gave Dr. Madisetti's statements limited weight because they were somewhat conclusory, his explanation accords with the Court's improved understanding of circuit design and the language used by persons skilled in this field.  Therefore, the Court gives Dr. Madisetti's testimony some weight in evaluating the claim term.

And it does not matter that this structure is conveyed, in part, by functional language. Many structures derive their names from the functions they serve. *See Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1583 (Fed. Cir. 1996) ("Many devices take their names from the functions they perform. . . . What is important is not simply that a [term] is defined in terms of what it does, but that the term, as the name for structure, has a reasonably well understood meaning in the art."); *Skky*, 859 F.3d at 1019 ("[I]t is sufficient if the claim term is used in common parlance or by persons of skill in the pertinent art to designate structure, . . . *even if the term identifies the structures by their function*." (emphasis added) (citation omitted)).

To be sure, today's order necessarily requires repudiation of some of the reasoning found in the Court's previous claim construction order. Portions of this order may contradict portions of the Court's previous claim construction order. But with the benefit of a deeper understanding of the technology at issue, additional insight about the way a POSITA would discuss circuit components, and an improved grasp of Federal Circuit case law, the Court concludes that this is the better construction of the term.[3]

Accordingly, the Court holds that "voltage-raising means that are arranged to raise the voltage value of the control signal" is not a means-plus-function limitation. The Court adopts NXP's construction and construes the term to mean "a circuit that raises the voltage value of the control signal."

D.   Other Issues

The Court takes this opportunity to address a few other related issues.

First, as will be further explained in a forthcoming order, the Court will grant the portion of Impinj's motion to exclude Dr. Madisetti (Dkt. # 274) regarding NXP's '097 infringement

---

[3] To avoid any doubt, this order fully replaces all reasoning concerning the "voltage-raising means" term found in the prior order.

ORDER MODIFYING CLAIM
CONSTRUCTION - 11

theory based on a rectifier and level shifter combination. NXP's infringement contentions did *not* disclose a rectifier and level shifter combination as satisfying the "voltage-raising means" limitation. Its infringement contentions focused nearly exclusively on a level shifter. And because the Court has now adopted NXP's preferred construction, NXP cannot justify its failure to disclose its combination-based theory in its infringement contentions. Accordingly, NXP cannot rely on the rectifier and level shifter combination to satisfy this claim limitation. The parties should take this ruling into account in any future filings.

Second, the Court recognizes that its decision today may affect the parties and the case in various ways. After the parties have met and conferred, the Court is amenable to a telephonic status conference about how, if at all, this decision affects the litigation as a whole. The parties are advised to email Courtroom Deputy Ashleigh Drecktrah if they wish to arrange for a telephonic conference.

## IV.

### CONCLUSION

For the reasons above, the Court modifies its construction of the "voltage-raising means" term of the '097 Patent. The Court does not construe the term as a means-plus-function term, and interprets it to mean "a circuit that raises the voltage value of the control signal."

Dated this 6th day of March, 2023.

*John H. Chun*
_____
John H. Chun
United States District Judge