HONORABLE JOHN H. CHUN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NXP USA, INC. and NXP B.V.,

               Plaintiffs,

     v.

IMPINJ, INC.,

               Defendant.

NO.  2:20-cv-01503-JHC

PRETRIAL ORDER

Pursuant to Local Civil Rule 16, Plaintiffs NXP USA, Inc. and NXP B.V. (collectively "NXP" or "Plaintiffs") and Defendant Impinj, Inc., ("Impinj") hereby present this Proposed Pretrial Order.

The Court adopts the parties' Proposed Pretrial Order without modification. However, the Court notes that portions of the Order have been rendered moot by recent decisions by the Court and various agreements between the parties. For example, the Court's recent decision granting Impinj summary judgment of non-infringement of the '092 Patent eliminates one of the two patents remaining in this action.

With that caveat, the Court hereby enters this Pretrial Order.

## I.    JURISDICTION

This action arises under the patent laws of the United States, Title 35, United States Code, 35 U.S.C. § 1 *et seq.*  This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).  Personal jurisdiction is not contested for purpose of this action.

## II.    CLAIMS AND DEFENSES

### Plaintiffs' Statement of Claims

NXP's statement of the claims is just that – a statement of the claims that exist with the benefit of the Court's guidance on the parties' disclosed positions and arguments.  This is in contrast to Impinj's statement in this section and in Section XII, which offers entirely new arguments, based on the false assertion that the claim construction governing in the '092 case is new or a changed construction.  As explained in more detail in Section XII, below, Impinj yet again attempts to delay trial by offering new arguments that it could, and should, have disclosed months, if not years, ago.  Impinj's attempt to avoid judgment should be refused, and this case should go to trial as scheduled.  NXP now turns to explaining its position on the issues properly in this case.

NXP[1] claims that Impinj willfully infringes claims 1-5, 7-10 and 11-14 of United States Patent No. 7,257,092 ("the '092 patent") under 35 U.S.C. § 271 (a) (all claims), (b) (claims 1-5), and (c) (claims 1-5).  In particular, NXP claims that the following accused instrumentalities, alone or in combination, infringe at least one or more of the asserted claims of the '092 patent:

| '092 Accused RFID Tag Chips | Product Name | Part Number |
|---|---|---|
| Monza® 4 series RFID tag chips, including at least the Monza® 4 tag chips with names or part numbers identified in this table. | Monza 4E | IPJ-W1510-E00 |
| | Monza 4QT | IPJ-W1512-E00 |
| | Monza 4D | IPJ-W1513-E00 |
| | Monza 4i | IPJ-W1535-E00 |
| | Monza 4QT Dura | IPJ-P5003 |
| | Monza 4E Dura | IPJ-P5005 |
| | Monza 5 | IPJ-W1600-B00 |

---

[1] NXP USA, Inc. and NXP B.V. are named Plaintiffs in this matter.  Without waiving any right to appeal any of the Court's rulings to date, NXP states that it will only present NXP B.V. as plaintiff during its jury trial presentation.

[PROPOSED] PRETRIAL ORDER- 2
(Case No. 2:20-cv-01503-JHC)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

| '092 Accused RFID Tag Chips | Product Name | Part Number |
|---|---|---|
| Monza® 5 series RFID tag chips, including at least the Monza® 5 tag chips with names or part numbers identified in this table. | Monza 5 | IPJ-W1600-E00 |
| Monza® 6 series RFID tag chips, including at least the Monza® 6 tag chips with names or part numbers identified in this table. | Monza R6 | IPJ-W1700-K00 |
| | Monza R6-A | IPJ-W1730-K00 |
| | Monza R6-B | IPJ-W1731-K00 |
| | Monza R6-P | IPJ-W1710-K00 |
| | Monza R6-P | IPJ-W1710-A00 |
| | Monza S6-C | IPJ-W1720-K00 |
| Monza® X series RFID tag chips, including at least the Monza® X tag chips with names or part numbers identified in this table. | Monza X-2K | IPJ-P6001-Q2AT |
| | Monza X-8K | IPJ-P6005-X2AT |
| | Monza X-8K | IPJ-P6005-X2BT |
| M700 series RFID tag chips, including at least the M700 tag chips with names or part numbers identified in this table, and reasonably similar products that include FastID™ operation. | M730 | IPJ-M730A-A00 |
| | M750 | IPJ-M750A-A00 |
| | M770 | IPJ-M770-A00 |
| | M775 | IPJ-M775-A00 |
| | M780 | IPJ-M780A-A00 |
| | M781 | IPJ-M771-A00 |

| '092 Accused RFID Readers | Product Name | Part Number |
|---|---|---|
| Speedway RAIN RFID Reader R420[2] | R420 | IPJ-REV-R420 |
| Speedway RAIN RFID Reader R220 | R220 | IPJ-REV-R220 |
| Speedway RAIN RFID Reader R120 | R120 | IPJ-REV-R120 |
| R700 RAIN RFID Reader | R700 | IPJ-R700-141 |
| | R700 | IPJ-R700-241 |
| | R700 | IPJ-R700-341 |

| '092 Accused RFID Reader Modules | Product Name | Part Number |
|---|---|---|
| Indy RAIN RFID Reader RS500 | RS500 | IPJ-RS500-GX |
| | RS500 | IPJ-RS500-EU |
| Indy RAIN RFID Reader RS1000 | RS1000 | IPJ-RS1000-GX |
| Indy RAIN RFID Reader RS2000 | RS2000 | IPJ-RS2000-1 |

---

[2] Impinj markets and sells "Gateway" products, which are Speedway readers that are integrated with antennas. Impinj's xPortal Gateway contains the Speedway R420 reader, and the xArray and xSpan Gateways contain Speedway R220 readers.

[PROPOSED] PRETRIAL ORDER- 3
(Case No. 2:20-cv-01503-JHC)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

| '092 Accused RFID Reader Modules | Product Name | Part Number |
|---|---|---|
| | RS2000 | IPF-RS2000-2 |

NXP also claims that Impinj willfully infringes claims 1, 3, 4, 6, and 7 of United States Patent No. 7,374,097 ("the '097 patent") under 35 U.S.C. § 271 (a) (claims 4, 6, and 7), (b) (claims 1 and 3), and (c) (claims 1 and 3).  In particular, NXP claims that the following accused instrumentalities, alone or in combination, infringe at least one or more the asserted claims of the '097 patent:

| '097 Accused RFID Tag Chips | Product Name | Part Number |
|---|---|---|
| Monza® 4 series RFID tag chips, including at least the Monza® 4 tag chips with names or part numbers identified in this table. | Monza 4E | IPJ-W1510-E00 |
| | Monza 4QT | IPJ-W1512-E00 |
| | Monza 4D | IPJ-W1513-E00 |
| | Monza 4i | IPJ-W1535-E00 |
| | Monza 4QT Dura | IPJ-P5003 |
| | Monza 4E Dura | IPJ-P5005 |
| Monza® 5 series RFID tag chips, including at least the Monza® 5 tag chips with names or part numbers identified in this table. | Monza 5 | IPJ-W1600-B00 |
| | Monza 5 | IPJ-W1600-E00 |
| Monza® 6 series RFID tag chips, including at least the Monza® 6 tag chips with names or part numbers identified in this table. | Monza R6 | IPJ-W1700-K00 |
| | Monza R6-A | IPJ-W1730-K00 |
| | Monza R6-B | IPJ-W1731-K00 |
| | Monza R6-P | IPJ-W1710-K00 |
| | Monza R6-P | IPJ-W1710-A00 |
| | Monza S6-C | IPJ-W1720-K00 |
| Monza® X series RFID tag chips, including at least the Monza® X tag chips with names or part numbers identified in this table. | Monza X-2K | IPJ-P6001-Q2AT |
| | Monza X-8K | IPJ-P6005-X2AT |
| | Monza X-8K | IPJ-P6005-X2BT |
| M700 series RFID tag chips, including at least the M700 tag chips with names or part numbers identified in this table. | M730 | IPJ-M730A-A00 |
| | M750 | IPJ-M750A-A00 |
| | M770 | IPJ-M770-A00 |
| | M775 | IPJ-M775-A00 |
| | M780 | IPJ-M780A-A00 |
| | M781 | IPJ-M771-A00 |

NXP seeks damages adequate to compensate it for Impinj's infringing activities in an

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

amount to be determined at trial under 35 U.S.C. § 284.[3]  NXP also seeks increased or enhanced damages under 35 U.S.C. § 284 based on Impinj's willful infringement (*see e.g.,* Impinj's Verified Responses to NXP's Interrogatory No. 17 dated December 1, 2022).  NXP further seeks costs, expenses, and reasonable attorneys' fees under 35 U.S.C. § 285.  NXP also seeks injunctive relief restraining Impinj from further infringing the Patents-in-Suit.

### Defendant's Statement of Claims

Defendant ("Impinj") asserts, as an initial matter, that NXP USA, Inc. has no standing to assert infringement and should be dismissed from the case.  The Complaint does not assert that NXP USA owns either of the two patents or is an exclusive licensee of the patents.  A nonexclusive licensee does not have standing to assert infringement.  Separately, Impinj denies that it is infringing or has infringed any of the asserted claims of the '092 or '097 patents.  Impinj also claims that the asserted claims of the '092 and '097 patents are invalid under 35 U.S.C. §§ 102 and/or 103 based on prior art, including prior art not considered by the U.S. Patent Office during the original prosecution of the applications leading to the patents.  Impinj also asserts that the claims of the '092 patent are, based on the Court's most recent construction, invalid under 35 U.S.C. § 101 because they are directed to the abstract concept of sending both "identification data" and "useful data."  Impinj also asserts that the claims of the '092 patent are indefinite, because of the two terms above, and as reflected in the Court's difficulty in construing the terms of the claims. The '092 patent does not "particularly point out" the invention as required by 35 U.S.C. § 112. Impinj also denies that there is any basis for NXP's claim of willful infringement. The patents were issued more than 11 years before the present suit was filed, and NXP never put Impinj on notice of the patents, much less asserted that Impinj was infringing, prior to the filing of the Complaint. Further, Impinj has strong defenses, including nonfrivolous good faith defenses of noninfringement and invalidity, on each of the patents.  Moreover, Impinj had already started

---

[3] NXP reserves all rights to appeal the Court's rulings to date including the order granting Impinj's motion for summary judgment of non-infringement of U.S. Patent No. 7,795,951 (Dkt. 380).

[PROPOSED] PRETRIAL ORDER- 5
(Case No. 2:20-cv-01503-JHC)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

developing or had already released the xPortal, xArray, xSpan[4], RS500, RS2000, RS1000, Speedway R420, Speedway R120, Speedway R220, Monza 4, Monza 5, Monza X-2K, Monza X-8K, Monza R6, and M700 products when it first became aware of the Asserted Patents upon NXP's filing of the complaint.  Impinj had also already released products that supported the accused FastID feature when it first became aware of the Asserted Patents.

Impinj denies that NXP is entitled to any damages but, to the extent it is, Impinj asserts that such damages are limited to a reasonable royalty on accused products delivered to customers in the United States.  NXP is not entitled to lost profit damages (Dkt. #452 at 21).  Impinj also denies that NXP can show any entitlement to injunctive relief.

Impinj also seeks recovery of its attorneys' fees and costs under 35 U.S.C. § 285, 18 U.S.C. § 1927, or the Court's inherent powers, because NXP knew or should have known that its infringement claims have no merit, particularly following the Court's Claim Construction Order, and including the claims it made under the "wafer patents," which it knew or should have known had no merit in light of its license to TSMC. All of NXP's claims in this lawsuit are meritless and were simply intended to harass Impinj for having sued NXP in the Northern District of California.

## III.   ADMITTED FACTS

**The Parties**

1.     Plaintiff NXP USA, Inc. ("NXP USA") is a Delaware corporation, with a principal place of business at 6501 William Cannon Drive West, Austin, Texas 78735.

2.     Plaintiff NXP B.V. is a Netherlands corporation, with a principal place of business at High Tech Campus 60, 5656 AG, Eindhoven, the Netherlands.

3.     NXP USA is an indirect subsidiary of NXP B.V.

4.     NXP USA was acquired by NXP B.V. via acquisition from Freescale Semiconductor Inc. ("Freescale") in December 2015.  Freescale was created out of a Motorola

---

[4] Impinj denies that the xPortal, xArray, and xSpan are accused products.

[PROPOSED] PRETRIAL ORDER- 6
(Case No. 2:20-cv-01503-JHC)

1   divestiture in the early 2000s.

2        5.     Defendant Impinj is a Delaware corporation with its principal place of business at

3   400 Fairview Avenue North, Seattle, Washington, 98109.

4     **The Asserted Patents**

5        **U.S. Patent 7,257,092**

6        6.     NXP B.V. is asserting United States Patent No. 7,257,092 ("the '092 patent"),

7   which is entitled "Method Of Communicating Between A Communication Station And At Least

8   One Data Carrier" and was issued on August 14, 2007 to NXP B.V.

9        7.     Franz Amtmann is the named inventor of the '092 patent.

10       8.     The '092 Patent was filed on March 11, 2002 as U.S. Patent Application No.

11  10/095,401 and claims priority to European Patent Application 01890073, filed on March 13,

12  2001.

13       9.     NXP B.V. is the owner of the '092 patent.

14       10.    The '092 patent expires on March 24, 2025.

15       11.    Impinj became aware of the '092 patent when NXP served its Complaint in this

16  litigation on October 7, 2019.

17       12.    Impinj became aware when NXP served its Complaint in this litigation on October

18  7, 2019 that NXP accused Impinj's "FastID inventory mode" of infringing the '092 patent.

19       13.    ISO/IEC 15693-3: Identification Cards – Contactless Integrated Circuit Cards –

20  Vicinity Cards, Part 3: Anti-collision and Transmission Protocol, as reflected in ISO/IEC CD

21  15693-3 (Nov. 17, 1999) (IMPINJ_WDWASH_PA_007018), ISO/IEC FCD 15693-3 (March 10,

22  2000) (IMPINJ_WDWASH_PA_000997) or ISO/IEC 15693-3 (April 1, 2001)

23  (IMPINJ_WDWASH_PA_001047), is prior art to the '092 patent.

24       14.    U.S. Patent No. 6,963,270 ("Gallagher") is prior art to the '092 patent.

25       15.    U.S. Patent No. 5,940,006 ("MacLellan") is prior art to the '092 patent.

16.     U.S. Patent No. 6,362,737 ("Rodgers") is prior art to the '092 patent.

**U.S. Patent 7,374,097**

17.     NXP B.V. is asserting United States Patent No. 7,374,097 ("the '097 patent"), which is entitled "Data Carrier For Storing Information Represented By An Information Voltage" and was issued on May 20, 2008 to NXP B.V.

18.     Ewald Bergler is the named inventor of the '097 patent.

19.     The '097 patent was filed on May 16, 2003 as U.S. Patent Application No. 10/516,981 and claims priority to European Patent Application 02100673, filed on June 7, 2002.

20.     NXP B.V. is the owner of the '097 patent.

21.     The '097 patent expires on February 24, 2025.

22.     Impinj became aware of the '097 patent when NXP served its Complaint in this litigation on October 7, 2019.

23.     Impinj became aware when NXP served its Complaint in this litigation on October 7, 2019 that NXP accused Impinj's RFID tag chips "that include a capacitor to store information, such as an inventoried flag that is set to one or two values (e.g., A or B), that is represented by the value of a voltage" of infringing the '097 patent.

24.     U.S. Patent No. 6,147,605 ("Vega") is prior art to the '097 patent.

25.     U.S. Patent No. 5,180,298 ("Choi") is prior art to the '097 patent.

26.     U.S. Patent No. 5,933,386 ("Walker") is prior art to the '097 patent.

27.     U.S. Patent No. 5,499,209 ("Oowaki") is prior art to the '097 patent.

28.     U.S. Patent No. 6,879,809 ("Vega '809") is prior art to the '097 patent.

29.     U.S. Patent No. 5,818,290 ("Tsukada") is prior art to the '097 patent.

30.     U.S. Patent No. 6,373,753 ("Proebsting") is prior art to the '097 patent.

**The Accused Products**

31.     Impinj designs, markets and sells the following RFID RAIN tag chips: Monza 4E,

Monza 4QT, Monza 4D, Monza 4i, Monza 4QT Dura, Monza 4E Dura, Monza 5, Monza R6, Monza R6-A, Monza R6-B, Monza R6-P, Monza S6-C, Monza X-2K, Monza X-8K, M730, M750, M770, M775, M780, and M781 ("Accused Tag Chips")[5].

32.     Impinj designs, markets and sells the following RFID RAIN readers: Speedway R420, Speedway R220, Speedway R120, R700, as well as "Gateway" products which are Speedway readers integrated with an antenna or antennas, including xPortal Gateway, xArray Gateway and xSpan Gateway ("Accused Readers").[6]

33.     Impinj designs, markets and sells the following RAIN RFID Reader Modules: Indy RS500, Indy RS1000, and Indy RS2000 ("Accused Reader Modules").

34.     Impinj uses, offers for sale, sells, and/or imports some of the Accused Tag Chips in the United States.

35.     Impinj uses, offers for sale, sells, and/or imports some of the Accused Readers in the United States.

36.     Impinj uses, offers for sale, sells, and/or imports some of the Accused Reader Modules in the United States.

37.     Each of Impinj's Accused Tag Chips is Gen2 compliant.

38.     Some of Impinj's Accused Tag Chips support Impinj's FastID mode of operation.

39.     Each of Impinj's Accused Tag Chips supports Impinj's TagFocus mode of operation.

40.     Each of Impinj's Accused Readers is Gen2 compliant.

41.     Each of Impinj's Accused Readers supports Impinj's FastID mode of operation.

42.     Each of Impinj's Accused Reader Modules is Gen2 compliant.

---

[5] *See e.g.,* NXP's Second Supplemental Infringement Contentions dated March 29, 2022 identifying, as accused devices the "M700 series RFID tag chips, including at least the M700 tag chips . . . and reasonably similar products," and reserving the right to identify new M700 series products.  Impinj denies that the M770, M775, M780, and M781 are accused products.

[6] Impinj denies that the xPortal, xArray, and xSpan are accused products.

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

43.     Each of Impinj's Accused Reader Modules supports Impinj's FastID mode of operation.

44.     Impinj's FastID mode allows the accused Impinj-based readers to receive contents of the electronic product code ("EPC") memory and the contents of the tag identifier memory ("TID memory") of the accused Impinj tag chips that support FastID during Gen2 inventory without having to perform an access operation.  In FastID mode, the tag chip backscatters the tag chip's EPC and TID in its reply to an *ACK* command from the reader.

45.     Impinj has tested an Accused Reader in the United States to communicate with an RFID tag using Impinj's FastID mode of operation since October 4, 2019.

46.     Impinj has tested an RFID reader or encoder containing an Accused Reader Chip or Module in the United States to communicate with an RFID tag using Impinj's FastID mode of operation since October 4, 2019.

47.     Impinj has tested an RFID tag containing an Accused Tag Chip in the United States to communicate with an RFID reader or encoder using Impinj's FastID mode of operation since October 4, 2019.

**NXP's Competing Products**

48.     NXP's UCODE 8 product practices at least one claim of the '097 patent.

49.     NXP released its UCODE 8 product Q3 2017.

50.     None of NXP's UCODE 8 products have ever been marked with the '097 patent pursuant to 35 U.S.C. § 287(a).

51.     NXP is not seeking pre-suit damages for the alleged infringement of the '097 patent between Q3 2017 and October 3, 2019.

52.     NXP's UCODE 9 product practices at least one claim of the '097 patent.

53.     None of NXP's UCODE 9 products have ever been marked with the '097 patent pursuant to 35 U.S.C. § 287(a).

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

54.     NXP B.V. does not make, use, sell, or distribute any UCODE 7, UCODE 8, or UCODE 9 products.

55.     NXP is not seeking pre-suit damages for the alleged infringement of the '092 patent.

**Impinj's Source Code**

56.     Impinj produced circuit schematics in a document titled ███████.pdf that bears Bates numbers IMPINJ_NXP_WDTEX_00006191 to IMPINJ_NXP_WDTEX_00006515 marked as Trial Exhibit 468. This document represents the circuitry contained in the M730 and M750 products.

57.     Impinj produced circuit schematics in a document titled ███████.pdf that bears Bates numbers IMPINJ_NXP_WDTEX_00006038 to IMPINJ_NXP_WDTEX_00006190 marked as Trial Exhibit 469. This document represents the circuitry contained in the Monza 4D, Monza 4E, Monza 4I, Monza 4QT, Monza 4E Dura, and Monza 4QT Dura products.

58.     Impinj produced circuit schematics in a document titled ███████.pdf that bears Bates numbers IMPINJ_NXP_WDTEX_00004538 to IMPINJ_NXP_WDTEX_00004732 marked as Trial Exhibit 474. This document represents the circuitry contained in the Monza-X-8K product.

59.     Impinj produced circuit schematics in a document titled ███████.pdf that bears Bates numbers IMPINJ_NXP_WDTEX_00004733 to IMPINJ_NXP_WDTEX_00004921 marked as Trial Exhibit 473. This document represents the circuitry contained in the Monza X-2K product.

60.     Impinj produced circuit schematics in a document titled ███████.pdf that bears Bates numbers IMPINJ_NXP_WDTEX_00005392 to IMPINJ_NXP_WDTEX_00005625 marked as Trial Exhibit 471. This document represents the circuitry contained in the Monza R6-A,

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

Monza R6-B, Monza R6-P and Monza S6-C products.

61.     Impinj produced circuit schematics in a document titled ██████████.pdf that bears Bates numbers IMPINJ_NXP_WDTEX_00005626 to IMPINJ_NXP_WDTEX_00006037 marked as Trial Exhibit 470. This document represents the circuitry contained in the Monza 5 product.

62.     Impinj produced circuit schematics in a document titled ██████████.pdf that bears Bates numbers IMPINJ_NXP_WDTEX_00004922 to IMPINJ_NXP_WDTEX_00005391 marked as Trial Exhibit 472. This document represents the circuitry contained in the Monza R6 product.

63.     Impinj produced Verilog code in a directory named \Monza4_verilog\. The code in this directory correlates to each of the Monza 4D, Monza 4E, Monza 4I, Monza 4QT, Monza 4E Dura, Monza 4QT Dura products.

64.     Impinj produced Verilog code in a directory named \Monza5_verilog\. The code in this directory correlates to the Monza 5 product.

65.     Impinj produced Verilog code in a directory named \MonzaR6_verilog\. The code in this directory correlates to each of the Monza R6, Monza R6-A, and Monza R6-B products.

66.     Impinj produced Verilog code in a directory named \MonzaR6P_verilog\. The code in this directory correlates to each if the Monza R6-P and S6-C products.

67.     Impinj produced Verilog code in a directory named \MonzaX2K_verilog\. The code in this directory correlates to the Monza X-2K product.

68.     Impinj produced Verilog code in a directory named \MonzaX8K_verilog\. The code in this directory correlates to the Monza X-8K product.

69.     Impinj produced Verilog code in a directory named \M730_M750_verilog\. The code in this directory correlates to each of the M730 and M750 products.

70.     Impinj produced source code in a directory named

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

\Impinj_Speedway_R700_Restricted\. This directory contains subdirectories named \r700\ and \speedway\. The code in the \r700\ subdirectory correlates to the R700 product. The code in the \speedway\ subdirectory correlates to each of the Speedway R420, Speedway R220 and Speedway R120 products. The code contained within the \Impinj_Speedway_R700_Restricted\ directory that is not in the \r700\ or \speedway\ subdirectories is common to the R700, Speedway R420, Speedway R220, and Speedway R120 products.

71.    Impinj produced source code in directories named \FastID\ex10_bundle_v1.02.00\, \FastID\ex10_bundle_v1.02.00_w_utils\, \█████████████\, and \███████████\. The code in these directories correlates to each of the E310, E510, E710, and E910 products.

72.    Impinj produced source code in a directory named \FastID\Indy Development Kit\. The code in this directory correlates to each of the Indy RS500, Indy RS1000, and Indy RS2000 products.

73.    Impinj produced source code in a directory named \IndyMAC\. The code in this directory correlates to each of the Indy R500, Indy R1000, and Indy R2000 products.

74.    Impinj produced source code in a directory named \Gateway Products\. The code in this directory correlates to each of the xArray, xSpan, and xPortal products.

## IV.   ISSUES OF FACT

The following are issues to be determined by the Jury:

**Plaintiffs' Issues of Fact to be Litigated**

1.    Whether Plaintiffs have proven, by a preponderance of the evidence, that Defendant has directly infringed one or more of claims 1-5, 7-10, and 11-14 of U.S. Patent 7,257,092 pursuant to 35 U.S.C. § 271(a).

2.    Whether Plaintiffs have proven, by a preponderance of the evidence, that Defendant has indirectly infringed one or more of claims 1-5 of U.S. Patent 7,257,092 pursuant to 35 U.S.C. § 271(b).

3.    Whether Plaintiffs have proven, by a preponderance of the evidence, that Defendant

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

has indirectly infringed one or more of claims 1-5 of U.S. Patent 7,257,092 pursuant to 35 U.S.C. § 271(c).

4.      Whether Plaintiffs have proven, by a preponderance of the evidence, that Defendant has directly infringed one or more of claims 4, 6 and 7 of U.S. Patent 7,374,097 pursuant to 35 U.S.C. § 271(a).

5.      Whether Plaintiffs have proven, by a preponderance of the evidence, that Defendant has indirectly infringed one or more of claims 1 and 3 of U.S. Patent 7,374,097 pursuant to 35 U.S.C. § 271(b).

6.      Whether Plaintiffs have proven, by a preponderance of the evidence, that Defendant has indirectly infringed one or more of claims 1 and 3 of U.S. Patent 7,374,097 pursuant to 35 U.S.C. § 271(c).

7.      Whether Plaintiffs have proven, by a preponderance of the evidence, that Defendant has willfully infringed one or more of claims 1-5, 7-10, and 11-14 of U.S. Patent 7,257,092 pursuant to 35 U.S.C. § 284.

8.      Whether Plaintiffs have proven, by a preponderance of the evidence, that Defendant has willfully infringed one or more of claims 1, 3, 4, 6 and 7 of U.S. Patent 7,374,097 pursuant to 35 U.S.C. § 284.

9.      Whether and to what degree Plaintiffs have proven the amount of a reasonable royalty under 35 U.S.C. § 284.

**Defendant's Issues of Fact to Be Litigated**

10.     Whether NXP B.V. has proven, by a preponderance of the evidence, that the electronic product code ("EPC") returned by the Accused Products as part of FastID is a "characteristic identification data block (IDB)" as recited in the asserted claims of the '092 patent.

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

11.     Whether NXP B.V. has proven, by a preponderance of the evidence, that the tag identifier ("TID") returned by the Accused Products as part of FastID is "specific useful data (n×UDB)" and not "characteristic identification data block (IDB)" as recited in the asserted claims of the '092 patent.

12.     Whether NXP B.V. has proven that the accused products have TIDs that include Security (S) or File (F) indicators.

13.     Whether NXP B.V. has proven that the accused Monza 4, 5, X-2K, and X-8K tag chips, which conform to the Gen2 standard version 1.2.0 that does not include Security (S) or File (F) indicators in TID, have TIDs that include Security (S) or File (F) indicators.

14.     Whether NXP B.V. has proven that the accused products store Security (S) or File (F) indicators in memory.

15.     Whether NXP has proven that Security (S) or File (F) indicators described in the Gen2 version 2.0 standard as "TID memory locations above 07h shall be defined according to the registration authority defined by this class-identifier value and shall contain, at a minimum, sufficient information for an Interrogator to uniquely identify the custom commands and/or optional features that a Tag supports" and "[i]f the class identifier is E2h then TID memory above 07h shall be configured as follows: . . . • 09h: Security (S) indicator (whether a Tag supports the Authenticate and/or Challenge commands) • 0Ah: File (F) indicator (whether a Tag supports the FileOpen command) . . . ." are not identification data.

16.     Whether NXP B.V. has proven that FastID users use the File (F) and Security (S) indicator bits for anything other than as part of the overall TID for purposes of identification.

17.     Whether NXP B.V. has proven that the File (F) and Security (S) indicator are "useful" to FastID users.

[PROPOSED] PRETRIAL ORDER- 15
(Case No. 2:20-cv-01503-JHC)

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

18.     Whether NXP B.V. has proven that the eight MSB bits of the Unique Identifier ("UID") of the ISO/IEC 15693-3 standard are not identification data.

19.     Whether NXP B.V. has proven, by a preponderance of the evidence, that the ▮▮▮ signal of the Accused Products is a "control signal" as recited in the asserted claims of the '097 patent.

20.     Whether NXP B.V. has proven, by a preponderance of the evidence, that a POSITA would consider a ▮▮▮▮ a "voltage raising means" or a "voltage raising circuit."

21.     Whether NXP B.V. has proven, by a preponderance of the evidence, that the ▮▮▮ ▮▮ of the Accused Products is a "voltage raising means" that raises the voltage of the control signal as recited in the asserted claims of the '097 patent.

22.     Whether NXP B.V. has proven, by a preponderance of the evidence, that the ▮▮▮ ▮▮ of the Accused Products are a "voltage-limiting means" that limit the raising of the voltage value of the control signal as recited in the asserted claims of the '097 patent.

23.     Whether NXP B.V. has proven that the accused ▮▮▮▮ circuit can raise the control signal voltage to a value above the supply voltage.

24.     Whether the Accused Products include a control signal as recited in the asserted claims of the '097 patent.

25.     Whether Defendant has proven, by clear and convincing evidence, that one or more of claims 1-5, 7-10, and 11-14 of U.S. Patent 7,257,092 is invalid.

26.     Whether Defendant has proven, by clear and convincing evidence, that one or more of claims 1, 3, 4, 6, and 7 of U.S. Patent 7,374,097 is invalid.

27.     Whether NXP B.V. can recover damages for sales made to Impinj's customers outside of the United States under 35 U.S.C. § 271(a), (c), where such products never entered the

United States.

28.     Whether non-infringing alternatives to the '092 and '097 patents were available to Impinj and acceptable to its customers during the damages period.

29.     Whether NXP B.V. is precluded from seeking pre-suit damages on the '097 patent due to its failure to mark the G2IL products pursuant to 35 U.S.C. § 287(a).

30.     Whether NXP's G2IL product practices at least one claim of the '097 patent.

31.     Whether NXP released its G2IL product in or around 2010.

32.     Whether none of NXP's G2IL products have ever been marked with the '097 patent pursuant to 35 U.S.C. § 287(a).

## V.     ISSUES OF LAW

The following are issues of law to be determined by the Court:

**Plaintiffs' Issues of Law to the Be Litigated**

1.     Whether any damages should be enhanced under 35 U.S.C. § 284, and if so, to what degree of enhancement there should be.

2.     Whether this is an exceptional case under 35 U.S.C. § 285 entitling Plaintiff to recover reasonable attorney fees and if so, what amount.

3.     Whether NXP B.V. is entitled to prejudgment interest and costs if Defendant is found liable for infringement.

4.     Whether NXP B.V. has established that they are entitled to permanent injunctive relief enjoining Defendant and their affiliates, officers, agents, employees, attorneys, and all persons in active concert of participation with them from performing any acts that infringe one or more of the asserted claims.

**Defendant's Issues of Law to Be Litigated**

5.     Whether NXP USA has standing to assert infringement or act as a plaintiff in this

[PROPOSED] PRETRIAL ORDER- 17
(Case No. 2:20-cv-01503-JHC)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

case.

6.      Whether Defendant has proven, as matter of law, that it does not infringe any of the asserted claims of the '092 patent as detailed in its Renewed Motion for Summary Judgment (Dkt. 421).

7.      Whether the term "characteristic identification block (IDB)" encompasses the entire TID.

8.      Whether the term "useful data (UD)" can be construed to encompass individual bits from a data block that is otherwise used for identification, like the TID.

9.      Whether bits that identify features or supported commands of an IC are within the meaning of "characteristic identification data block (IDB)."

10.     Whether "useful data (UD)" encompasses data that is not specifically used by FastID users.

11.     Whether Defendant has proven, as matter of law, that it does not infringe any of the asserted claims of the '097 patent as detailed in its Renewed Motion for Summary Judgment (Dkt. 424).

12.     Whether Defendant has proven, as a matter of law, that the asserted claims of the '097 patent are obvious under 35 U.S.C. § 103, as detailed in its Renewed Motion for Summary Judgement (Dkt. 424).

13.     Whether the asserted claims of the '092 patent are indefinite under 35 U.S.C. § 112.

14.     Whether NXP B.V.'s claim for willful infringement is precluded by its failure to assert that Defendant had pre-filing notice of the asserted patents.

15.     Whether this is an exceptional case under 35 U.S.C. § 285 entitling Defendant to recover reasonable attorney fees and if so, what amount.

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

16.     Whether NXP B.V. can raise infringement theories or accused products that were not referenced in their infringement contentions, including (1) Dr. Madisetti's new theory that a ▉▉▉ alone in the accused products constitutes the recited "voltage raising means" of the '097 patent; (2) the new infringement theories set forth in Dr. Madisetti's supplemental expert reports regarding infringement of the '092 patent that were not disclosed in NXP's infringement contentions; and (3) Impinj's Gateway products that were not referenced in NXP's infringement contentions.

17.     Whether NXP B.V. is precluded from seeking pre-suit damages on the '097 patent due to their failure to mark the G2IL products pursuant to 35 U.S.C. § 287(a).

18.     Whether the claims of the '092 patent, under the Court's construction of the term "characteristic identification data block (IDB)" set forth in its Order Re: Renewed Motion for Summary Judgment as to the '092 Patent (Dkt. #469), are invalid as directed to unpatentable subject matter under 35 U.S.C. § 101.

19.     Whether the claims of the '092 patent, under the Court's construction of the term "characteristic identification data block (IDB)" set forth in its Order Re: Renewed Motion for Summary Judgment as to the '092 Patent (Dkt. #469), are subject to a mandatory royalty-free license pursuant to the EPCglobal IP Policy.

## VI.     EXPERT WITNESSES

Plaintiff shall be limited to a total of two (2) expert witnesses on the issues of infringement and validity.  Defendant shall be limited to a total of one (1) expert witness on the issues of infringement and validity.  Each party shall be limited to a per-side total of one (1) expert witness on the issues of damages.

**Plaintiff's Expert Witnesses:**

1.     **Vijay Madisetti, Ph.D.**  Plaintiff anticipates that Dr. Madisetti will testifying regarding the opinions and matters set forth in his expert reports served in this litigation, including

with respect to the infringement and validity of the asserted claims of U.S. Patent 7,257,092 and U.S. Patent 7,374,097.  Dr. Madisetti's address is 56 Creekside Park Drive, Johns Creek, GA 30022.

2.    **Joshua Goshorn**.  Plaintiff anticipates that Mr. Goshorn may testify regarding the opinions and matters set forth in his expert report served in this litigation, including his review and summary of source code, Verilog code and documentation relating to Impinj's source code for the accused Impinj products.  Mr. Goshorn's address is PO Box 3597, Carmel-by-the-Sea, CA, 93921.

3.    **David Haas.**  Plaintiff anticipates that Mr. Haas will testify regarding the opinions and matters set forth in his expert report served in this litigation, including damages with respect to infringement of U.S. Patent 7,257,092 and U.S. Patent 7,374,097.  Mr. Haas's address is 1 S. Wacker Dr., 38th Floor, Chicago, IL 60606.

**Defendant's Expert Witnesses:**

1.    **James Stevenson Kenney, Ph.D.** Defendant anticipates that Dr. Kenney will testify regarding the opinions and matters set forth in his expert report served in this litigation, including matters relating to the noninfringement and invalidity of the asserted claims of U.S. Patent No. 7,257,092 and No. 7,374,097. Dr. Kenney's address is 510 Forest Valley Road N.E., Atlanta, GA 30342.

2.    **Lauren Kindler.**  Defendant anticipates that Ms. Kindler will testify regarding the opinions and matters set forth in her expert report served in this litigation, including damages with respect to infringement of U.S. Patent No. 7,257,092 and U.S. Patent No. 7,374,097.  Ms. Kindler's address is 2911 Turtle Creek Boulevard, Suite 600, Dallas, TX 75219.

## VII.    OTHER WITNESSES

The names and addresses of witnesses, other than experts, to be used by each party at the time of trial and the general nature of the testimony of each are:

**Plaintiff's Witnesses-**subject to the Court's guidance as to the precise time limits and schedule

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

for the June 5th trial, Plaintiffs intend to present the following witnesses either live or by deposition as indicated below:

1.      **Franz Amtmann (will call live).**  Mikron-Weg 1, 8101 Gratkorn, Austria.  Mr. Amtmann will testify regarding the development, functionality and operation of NXP's UCODE products under the Gen 2 standard, the relationship between NXP and Impinj, as well as the conception and reduction to practice regarding U.S. Patent 7,257,092 and U.S. Patent 7,374,097, including the subject matter of the witness's deposition testimony in the NXP/Impinj patent infringement litigations.

2.      **Ewald Bergler (will call live or by deposition).**  Thannhausen, Austria. Mr. Bergler will testify regarding the development of NXP's UCODE products and the conception and reduction to practice regarding U.S. Patent 7,374,097, including the subject matter of the witness's deposition testimony in the NXP/Impinj patent infringement litigations.

3.      **Kurt Bischof (may call by deposition).**  Mikron-Weg 1, 8101 Gratkorn, Austria. Mr. Bischof may testify regarding the marketing of NXP's UCODE products.

4.      **Roland Brandl (may call by deposition).**  Mikron-Weg 1, 8101 Gratkorn, Austria. Mr. Brandl may testify regarding the development of NXP's UCODE products.

5.      **Lee Chastain (may call by deposition).**  6501 W William Cannon Dr, Austin, TX 78735. Mr. Chastain may testify regarding NXP's patent licensing practices.

6.      **Drew Dannels (may call by deposition).**  400 Fairview Ave N #488, Seattle, WA 98109.  Mr. Dannels may testify regarding the projected and actual costs, capital investments and profit margins for Impinj's accused products, including the subject matter of the witness's deposition testimony in the NXP/Impinj patent infringement litigations.

7.      **Derrick Paul Davies (may call by deposition).**  600 Unicorn Park Dr, Woburn, MA 01801.  Mr. Davies may testify regarding the marketing sales of NXP's UCODE products.

8.      **Chris Diorio (will call by deposition).**  400 Fairview Ave N #488, Seattle, WA

98109.  Mr. Diorio will testify regarding the development, operation, functionality and distribution of Impinj's accused products as well as Impinj's business model and financial information, including the subject matter of the witness's deposition testimony in the NXP/Impinj patent infringement litigations.

9.      **Jeffrey Dossett (will call by deposition).**  400 Fairview Ave N #488, Seattle, WA 98109.  Mr. Dossett will testify regarding matters related to Impinj's revenue model, product pricing and marketing of Impinj's accused products as well and distribution and use of the accused products, including the subject matter of the witness's deposition testimony in the NXP/Impinj patent infringement litigations.

10.      **Varsha Francis (may call by deposition).**  400 Fairview Ave N #488, Seattle, WA 98109.  Ms. Francis may testify regarding matters related to the development, operation, functionality and distribution of Impinj's accused products, including the subject matter of the witness's deposition testimony in this case.

11.      **Harley Heinrich (may call by deposition)** 400 Fairview Avenue, North Seattle, Washington 98109.  Mr. Heinrich may testify regarding the development, operation, functionality and distribution of Impinj's accused products, including the subject matter of the witness's deposition testimony in the NXP/Impinj patent infringement litigations.

12.      **Ralf Kodritsch (will call live).**  Mikron-Weg 1, 8101 Gratkorn, Austria**.**  Mr. Kodritsch will testify regarding matters related to product pricing and marketing of the UCODE products as well as manufacturing, distribution and use of the UCODE products.

13.      **Hussein Mecklai (may call by deposition).**  400 Fairview Avenue, North Seattle, Washington 98109.  Mr. Mecklai may testify regarding the development, operation, functionality and distribution of Impinj's accused products, including the subject matter of the witness's deposition testimony in the NXP/Impinj patent infringement litigations.

14.      **Ronald Oliver (will call by deposition).**  400 Fairview Avenue, North Seattle,

Washington 98109.  Mr. Oliver will testify regarding the development, operation, functionality and distribution of Impinj's accused products, including the subject matter of the witness's deposition testimony in the NXP/Impinj patent infringement litigations.

15. **Srinath Rajen (may call live).**  6501 W William Cannon Dr, Austin, TX 78735. Mr. Rajen may testify regarding NXP's business model, corporate structure and financial information.

16. **Theron Stanford (may call by deposition).**  400 Fairview Avenue, North Seattle, Washington 98109.  Mr. Stanford may testify regarding the development, operation, functionality and distribution of Impinj's accused products, including the subject matter of the witness's deposition testimony in the NXP/Impinj patent infringement litigations.

17. **Nigel Stott (may call by deposition).**  600 Unicorn Park Dr, Woburn, MA 01801. Mr. Stott may testify regarding the marketing sales of NXP's UCODE products.

18. **Tan Wu (may call by deposition).**  400 Fairview Avenue, North Seattle, Washington 98109.  Mr. Tan may testify regarding Impinj's patent licensing practices.

19. **Hermann Zach (may call by deposition).**  Mikron-Weg 1, 8101 Gratkorn, Austria. Mr. Zach may testify regarding the development of NXP's UCODE products.

Rebuttal witnesses, the necessity of whose testimony cannot reasonably be anticipated before trial, are not named.

**Defendant's Witnesses:**

1. **Franz Amtmann (will call).**  Mikron-Weg 1, 8101 Gratkorn, Austria.  Mr. Amtmann will testify (either live, or alternatively by deposition) regarding the development of NXP's UCODE products, the relationship between NXP and Impinj, the conception and reduction to practice of the '092 patent, the NXP products allegedly embodying U.S. Patent 7,257,092 and U.S. Patent 7,374,097, and NXP's monitoring and analysis of Impinj products.

2. **Ewald Bergler (may call).**  Wegsheide 17, 8160, Thannhausen, Austria.  Mr.

Bergler may testify (either live or, alternatively, by deposition) regarding the development of NXP's UCODE products, the '097 patent, and the conception and reduction to practice regarding U.S. Patent 7,374,097.

3.    **Kurt Bischof (may call).**  Mikron-Weg 1, 8101 Gratkorn, Austria.  Mr. Brandl may testify (by deposition) regarding the development of NXP's UCODE products.

4.    **Roland Brandl (may call).**  Mikron-Weg 1, 8101 Gratkorn, Austria.  Mr. Brandl may testify (by deposition) regarding the development of NXP's UCODE products and NXP's monitoring and analysis of Impinj products.

5.    **Jon Choy (may call).**  6501 W William Cannon Dr, Austin, TX 78735.  Mr. Choy will testify (live or, alternatively, by deposition) regarding memory structures and NXP's competitive analysis.

6.    **Derrick Paul Davies (may call).**  600 Unicorn Park Dr, Woburn, MA 01801.  Mr. Davies may testify (by deposition) regarding the marketing and sales of NXP's UCODE products.

7.    **Ralf Kodritsch (will call).**  Mikron-Weg 1, 8101 Gratkorn, Austria**.**  Mr. Kodritsch will testify (either live or, alternatively, by deposition)) regarding matters related to product pricing and marketing of the UCODE products as well as manufacturing, distribution, and use of the UCODE products.

8.    **Hermann Zach (will call).**  Mikron-Weg 1, 8101 Gratkorn, Austria.  Mr. Zach will testify (by deposition) regarding the development of NXP's UCODE products.

9.    **Christian Zenz (may call).**  Mikron-Weg 1, 8101 Gratkorn, Austria.  Mr. Zenz may testify (by deposition) regarding the development of NXP's UCODE products, NXP's analysis of Impinj products, and the subject matter of the witness's deposition testimony in the NXP/Impinj patent infringement litigations.

10.    **Christopher Diorio (will call)**. 400 Fairview Avenue, North Seattle, Washington 98109. Mr. Diorio will testify regarding the development, operation, functionality and distribution

[PROPOSED] PRETRIAL ORDER- 24
(Case No. 2:20-cv-01503-JHC)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

of Impinj's accused products as well as Impinj's business model and financial information, including the subject matter of the witness's deposition testimony in the NXP/Impinj patent infringement litigations.

11.     **Jeffrey Dossett (will call).** 400 Fairview Avenue, North Seattle, Washington 98109. Mr. Dossett will testify regarding matters related to Impinj's revenue model, product pricing and marketing of Impinj's accused products as well and distribution and use of the accused products, including the subject matter of the witness's deposition testimony in the NXP/Impinj patent infringement litigations.

12.     **Hussein Mecklai (may call).** 400 Fairview Avenue, North Seattle, Washington 98109. Mr. Mecklai may testify regarding the development, operation, functionality, and distribution of Impinj's accused products, including the subject matter of the witness's deposition testimony in the NXP/Impinj patent infringement litigations.

13.     **Ronald Oliver (will call).** 400 Fairview Avenue, North Seattle, Washington 98109. Mr. Oliver will testify regarding the development, operation, functionality and distribution of Impinj's accused products, including the subject matter of the witness's deposition testimony in the NXP/Impinj patent infringement litigations.

14.     **Theron Stanford (may call).** 400 Fairview Avenue, North Seattle, Washington 98109. Mr. Stanford may testify regarding the development, operation, functionality, and distribution of Impinj's accused products, including the subject matter of the witness's deposition testimony in the NXP/Impinj patent infringement litigations.

15.     **Tan Wu (may call).** 400 Fairview Avenue, North Seattle, Washington 98109. Mr. Tan may testify regarding Impinj's patent and licensing practices.

16.     **Nathaniel Hillary (will call).** 400 Fairview Avenue, North Seattle, Washington 98109. Mr. Hillary will testify regarding the development, operation, and functionality of Impinj's accused products, including the subject matter of the witness's declarations submitted in this case.

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

17.     **Lee Chastain (may call).**  6501 W William Cannon Dr, Austin, TX 78735. Mr. Chastain may testify regarding NXP's patents, including the licensing, ownership, and assertion thereof.

18.     **Nigel Stott (may call).**  600 Unicorn Park Dr, Woburn, MA 01801.  Mr. Stott may testify regarding the marketing and sales of NXP's UCODE products.

19.     **Timothy Shelhamer (may call).**  High-Tech Campus 60, Eindhoven, Netherlands. Mr. Shelhamer may testify regarding the corporate structure of NXP.

## VIII.     EXHIBITS

In **Appendix 1** hereto, NXP identifies the exhibits which may be offered by NXP at the time of trial, except for exhibits to be used for impeachment only and demonstrative exhibits. Appendix 1 does not necessarily include all exhibits to be used for rebuttal, the necessity of which cannot reasonably be anticipated before trial.  In accordance with LCR 16.1, for each exhibit in the list, the following information is provided:  the exhibit number, description, and whether Impinj disputes authenticity and/or admissibility, along with Impinj's objection if disputed.  At present, and unless otherwise noted, NXP intends to present exhibits in electronic format to jurors.  NXP reserves the right to amend or supplement Appendix 1.  The inclusion of an exhibit on this list is not an admission that the exhibit is admissible, and NXP reserves the right to object to exhibits introduced by Impinj.

In **Appendix 2** hereto, Impinj identifies the exhibits which may be offered by Impinj at the time of trial, except for exhibits to be used for impeachment only, exhibits already listed in Appendix 1 (pursuant to LCR 16(i)(5), and demonstrative exhibits.  Appendix 2 does not necessarily include all exhibits to be used for rebuttal, the necessity of which cannot reasonably be anticipated before trial.  In accordance with LCR 16.1, for each exhibit in Appendix 2, the following information is provided: the exhibit number, description, and whether NXP disputes the authenticity and/or admissibility, along with NXP's objection if disputed.  At present, and unless otherwise noted, Impinj intends to present exhibits in electronic format to jurors.  Impinj reserves

the right to amend or supplement Appendix 2, including to add any exhibits that are removed from Appendix 1.  The inclusion of an exhibit on Appendix 2 is not an admission that the exhibit is admissible, and Impinj reserves the right to object to exhibits introduced by NXP.

The parties' objections to the other party's exhibits are encoded according to the following table, wherein, where appropriate, reference is made to the pertinent Federal Rule(s) of Evidence in code definition:

| Code | Objection |
|------|-----------|
| 106 | Fairness requires admission of other exhibits and documents of the remainder of the document |
| 402 | The evidence in the exhibit is not relevant and is not admissible. |
| 403 | Any relevance of the exhibit is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or considerations of unfair delay, waste of time, or needless presentation of cumulative evidence. |
| 408 | The evidence in the exhibit reflects conduct or statements made during compromise negotiations and is inadmissible pursuant to Fed. R. Evid. 408. |
| 701 | The evidence in the exhibit includes improper lay opinion. |
| 702 | The evidence in the exhibit includes improper expert opinion, |
| 703 | Exhibit contains facts or data relied upon by an expert witness that are otherwise inadmissible. |
| 802 | The exhibits contains or is hearsay and no exception applies and/or the exhibit contains or is hearsay within hearsay and no exception applies. |
| 1006 | The evidence in the exhibit includes improper summary of evidence. |
| F | The exhibit lacks foundation pursuant to Fed. R. Evid. 602, 901, 1002, 1003, 1005 and 1006. |
| NP | The exhibit was never provided. |
| MIL | Exhibit is subject to pending motion, including motions *in limine*, or a potential proposed joint stipulation regarding motions *in limine*. |

## IX.   DEPOSITION DESIGNATIONS

At this time, the parties have designated the universe of testimony it would consider using at trial, including testimony in the case of witness unavailability.  However, both parties anticipate playing significantly less deposition testimony at trial. As a result, the parties have agreed to a

[PROPOSED] PRETRIAL ORDER- 27
(Case No. 2:20-cv-01503-JHC)

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

stipulated schedule whereby the parties will exchange deposition designations and objections/counter designations that they actually intend to play in trial in a similar manner and timing to the parties' exchange of witnesses and exhibits for each day of trial.  In view of this stipulation, and in an effort to reduce burden on the Court, the parties proposed that the pretrial order would not include materials related to proposed depositions designations and that the parties would instead provide designations in accordance with the parties' agreed trial stipulation.  The Court indicated this proposal was acceptable.

## X.     ACTION BY THE COURT

a.      This case is scheduled for trial before a jury on June 5, 2023.

b.      Trial briefs shall be submitted to the Court on or before May 26, 2023.

c.      Jury instructions requested by either party shall be submitted to the Court on or before May 26, 2023.  Suggested questions of either party to be asked of the jury by the Court on voir dire shall be submitted to the Court on or before May 26, 2023.

## XI.     ADDITIONAL TRIAL STIPULATIONS BY THE PARTIES

The parties further stipulate as follows, subject to the Court's approval:

a.      The parties stipulate to the authenticity and business-record status of each document listed in Appendices 1 and 2 that on its face appears to have been generated by a Party (including documents generated by their employees and agents during the course of their employment or agency) and produced in this case by a Party, subject to the caveat that a Party may object to the admissibility of any specific statement in a document to the extent it can show that such statement does not fall within Fed. R. Evid. 803(6) or should otherwise not be admitted (e.g., pursuant to Fed. R. Evid. 402, 403 or other rule).

b.      A legible copy of an exhibit may be offered in evidence in lieu of the original subject to all foundational requirements and other objections that might be made to the admissibility of the original and subject to the right of the party against whom it is offered to inspect an original upon

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

request reasonably in advance of any proposed use of the copy. For exhibits that are spreadsheets or slide presentations, the parties may use electronic versions of such exhibits in their native format.

c.       The Parties will exchange by email lists of exhibits they intend to use during direct examination or by witnesses called by designation by 8:00 p.m. local time two (2) calendar days before their intended use (*i.e.,* Sunday evening for a witness to be called on Tuesday), and provide an identification of the witness(es) each such exhibit to be used with on direct examination or by designation.   The Parties shall exchange objections to exhibits by 8:00 p.m. one (1) calendar day before the exhibits are proposed to be introduced and the Parties shall then meet and confer regarding all objections by 10:00 p.m. the day the objections are provided.   To the extent good faith efforts to resolve objections fail, the objecting party will raise the objections with the Court, if possible, on the morning, before trial begins, of the day the exhibits are intended be used, but otherwise prior to the introduction of the exhibit.

d.       The Parties will identify by email witnesses to be called live or by deposition (in the order that they will be called) at 8:00 p.m. two (2) calendar days in advance of the day of trial during which the witnesses will testify.  For example, if a witness will testify on a Monday, the witness must be identified by 8:00 p.m. on the previous Saturday.  The Parties shall exchange objections to any identified witnesses by 8:00 p.m. the day before the witness is offered to testify.  The Parties shall then meet and confer telephonically or in person by 10:00 p.m. the day the objections are provided in an attempt to resolve any objections.  To the extent good faith efforts to resolve objections fail, the objecting party will raise the objections with the Court, if possible, on the morning, before trial begins, of the day the witness is intended to testify, but otherwise prior to witness taking the stand.

e.       For deposition designations, the Parties will provide a list of any deposition

designations that party intends to present, along with estimated run-times for video, by 8:00 p.m. two (2) days before the designation is to be read or played.   Any counter-designations and objections shall be provided by 8:00 p.m. the day before the deposition is to be played.    All objections to counter-designations shall be provided no later than 9:00 p.m. the day the counter- designations are provided.    The Parties shall then meet and confer regarding all objections by 10:00 p.m.   Any unresolved objections will be raised with the Court the next morning.    Promptly after the meet and confer one (1) day before the deposition testimony is to be played, the party that seeks to read or play the deposition testimony must provide the opposing party a workable copy of the actual recordings to be played (or testimony to be read), including all designations and counter designations included sequentially (i.e., in the order that they appeared at the deposition).

f.      The Parties will exchange by email copies of all documentary, graphic, slide, animation, boards, and any other form of Demonstratives they plan to use at trial for use during direct examination—but not for cross-examination—and an identification of witnesses each such Demonstrative will be used with, by 8:00 p.m. the night before the intended use.  In other words, if a demonstrative will be used on Monday, it must be exchanged or made available by 8:00 p.m. on the previous Sunday.  That same evening, the Parties shall exchange objections to demonstratives by 9:00 p.m. and then meet and confer regarding all objections by 10:00 p.m.  To the extent good faith efforts to resolve objections fail and there are additional unresolved objections about demonstrative exhibits, the objecting party will raise the objections with the Court, if possible, the morning before trial begins or resumes of the day the demonstratives is intended be used, or otherwise before their use.   Demonstratives exchanged will not be used by the opposing party prior to being used by the disclosing party.

g.      Any Demonstratives (documentary, graphic, slide, animation, mock-ups to be

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

created during opening statements with detail regarding their substance, and any other form of demonstratives), deposition testimony, and exhibits to be used during opening statements are to be exchanged by 10 a.m. one (1) day before the opening statements.  Any physical Demonstratives, including any poster boards, must be made available for inspection at the same time and physical Demonstratives must also be made available for inspection at the same time along with the other demonstratives. Any objections to the opening statement disclosures must be provided by 1:00 p.m. the day the disclosures are received.  The Parties shall meet and confer telephonically in an attempt to resolve any objections to these disclosures by 4:00 p.m.   If the Parties cannot resolve the objections, the unresolved issues will be raised with the Court in the morning, before opening statements are presented to the jury.  Demonstratives exchanged will not be used by an opposing party prior to being used by the disclosing party.

h.      The parties agree to request that the courtroom be sealed when a party's confidential information, including source code or evidence concerning highly sensitive business documents, testimony, or information is expected to be presented.

i.      The parties agree that only the specific code files or source code pages discussed at trial may be offered into evidence to become part of the record, not the entirety of the printed source code hard copies produced during fact discovery or their electronic image.   Any source code documents marked as exhibits need not be exchanged electronically. The party intending to use the source code will identify it by Bates number(s) and the particular lines it intends to reference. Once the trial is complete, counsel for the parties may retain a file copy of the admitted version of the source code trial exhibit(s), but any other digitized source code should be deleted.

j.      The Parties agree that once a witness begins testifying, counsel may not conduct substantive discussions with that witness until they are released by the Court. In other words, if a

[PROPOSED] PRETRIAL ORDER- 31
(Case No. 2:20-cv-01503-JHC)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

witness is held over past one day, counsel cannot discuss their testimony or the case with that witness until they are released.

k.       The Parties request that the Court present the most current tutorial video from the Federal Judicial Center regarding the U.S. Patent Office to the members of the jury as part of its preliminary instructions to the jury.

l.       The jurors shall be permitted to take handwritten notes during the presentations of the Parties.

m.       Twelve (12) copies of an agreed juror notebook which will contain lined witness sheets with names, titles, and color photos, a copy of any agreed-upon documents (including the Asserted Patent), a list of construed terms, a legal pad, a pen, and a highlighter will be delivered to the Court before jury selection, with the exception of the witness sheets. The witness sheets for a witness will be inserted in the notebook the morning of the witness's testimony by the court staff.

n.       The Parties will share any courtroom audio-visual equipment and will provide each other electronic versions of whatever they display immediately after the display.

This order has been approved by the parties as evidenced by the signatures of their counsel. This order shall control the subsequent course of the action unless modified by a subsequent order. This order shall not be amended except by order of the court pursuant to agreement of the parties or to prevent manifest injustice.

## XII.    OTHER ISSUES

*Other Issues Raised by NXP*

1.       **NXP's Position:** Impinj should be precluded from presenting expert testimony from Mr. Ronald Oliver and Mr. Nathaniel Hillary as neither witness was disclosed as an expert witness pursuant to Federal Rules of Evidence Rule 26.  NXP has addressed Mr. Oliver's purposed expert testimony in more detail in its motions *in limine*.  *See* Dkt. 458.  With respect to Mr. Hillary,

[PROPOSED] PRETRIAL ORDER- 32
(Case No. 2:20-cv-01503-JHC)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

1   Impinj filed a supplemental declaration its in reply in support of its renewed motion for summary

2   judgment (Dkt. 438) and served a document production on May 16, 2023 that appears to include

3   simulation testing run by Mr. Hillary.  Mr. Hillary should not be permitted to present expert

4   testimony pursuant to Federal Rules of Evidence 702, including any discussions of his simulation

5   testing, to the jury.

6      **Impinj's Response:** Neither Mr. Oliver nor Mr. Hillary are providing expert opinions--

7   they are providing fact testimony as to the structure and functionality of the accused products.  Mr.

8   Hillary, for example, was intended to provide testimony confirming that Impinj's accused readers

9   do not use either the EPC or TID to uniquely identify tags during the Gen2 inventory procedure.

10  This seemed to be the issue based on the Court's previous construction of "characteristic

11  identification data block."  What NXP refers to as  "simulation testing" is simply proof that

12  Impinj's readers can perform Gen2 inventory with no EPC data or where all EPC data is the

13  same.  This is not opinion testimony—these are facts that show that NXP's infringement

14  contentions are or at least were frivolous.  And Impinj is producing Mr. Hillary for deposition in

15  advance of trial.

16      2.   **NXP's Position:** Impinj should be precluded from presenting any evidence or

17  arguments that NXP is not entitled to pre-suit damages for the '097 patent for failure to mark the

18  NXP G2iL product. Impinj never raised this argument during the fact discovery period, raising it

19  for the first time during the exchange of pretrial materials in May 2023.  These arguments are not

20  only untimely, but they are based on speculative deposition testimony.  During Mr. Amtmann's

21  deposition, which Impinj relies on, he flagged from the very beginning of the examination that he

22  was unsure whether G2IL practiced the '097 patent (using "I think" language.)  Impinj did not do

23  any further examination as to the foundation or basis of his belief.   This testimony was never

24  raised again by Impinj (despite filing summary judgment on other issues related to the '097 patent

25  and marking) until Impinj served further revised, supplemental deposition designations on May

26  15th. And it was not until last week that Impinj indicated it intended to present argument at trial

    that there were marking issues based on the G2IL product. NXP's G2iL product does not practice

[PROPOSED] PRETRIAL ORDER- 33
(Case No. 2:20-cv-01503-JHC)

1   the '097 patent and does not preclude NXP from seeking pre-suit damages before the introduction

2   of UCODE 8 to the market.  Notably, in its interrogatory responses, NXP identified only UCODE

3   8 and UCODE 9 as practicing the '097 patent.  Impinj should not be heard now to complain about

4   reliance on speculative testimony to present an argument it failed timely to disclose as required by

5   the Court's schedule and the rules.

6       **Impinj's Response:** NXP's Fed. R. Civ. P. 30(b)(6) witness, Franz Amtmann, testified

7   seven months ago that the '097 patent was practiced by NXP's G2iL product.  During his

8   deposition, Mr. Amtmann twice confirmed that the G2iL practiced the '097 patent.  The second

9   time he confirmed this fact, his answer was unequivocal and did not use any "I think" language.

10  That product was never marked.  It is NXP's burden to show proper marking, not Impinj's, and

11  Impinj has relied on Mr. Amtmann's testimony since that time.  This was not an "argument" that

12  Impinj needed to raise during the discovery period.  NXP refers to interrogatory responses, but the

13  relevant interrogatory was directed to competing products—the G2iL product has never been

14  considered as a competing product.  Further, NXP has been intentionally misleading about

15  marking as can be seen from its interrogatory responses.  Impinj's interrogatory on whether any

16  NXP products practiced the '097 patent was not limited to the UCODE 7, 8, and 9 products.  Its

17  scope captured all NXP products that compete with Impinj's Accused Products.  NXP's G2iL

18  product was released around 2010, the same year that the Monza 4 (an accused product) was

19  released.  When Impinj asked NXP about whether its competing products practiced the patents,

20  NXP simply replied that it did not "contend" they did.  NXP also unilaterally limited its

21  interrogatory response to the UCODE 7, 8, and 9 products.  Only when Impinj has for proof that its

22  products did not practice the '097 patent, did NXP concede they did.  Impinj never had any reason

23  to think Mr. Amtmann's testimony on the G2iL product was wrong until he provided an errata, this

24  week, more than seven months after his deposition, completely reversing his testimony and saying

25  it did not practice the '097 patent.   Impinj relied on Mr. Amtmann's testimony as to marking and

26  its accuracy materially affects damages—NXP should not be allowed to disavow such an

    admission now.

[PROPOSED] PRETRIAL ORDER- 34
(Case No. 2:20-cv-01503-JHC)

*Other Issues Raised by Impinj*

3.      **Impinj's Position:** Impinj objects to the trial proceeding as scheduled given that the Court has issued a new claim construction for the '092 patent, just two weeks before the scheduled trial, that fundamentally changes the scope of the claims.  Impinj has spent months and hundreds of thousands of dollars preparing for trial based on the Court's prior construction, which linked the meaning of "characteristic identification data block" to how the claimed reader uses data to identify tags.  NXP had no plausible infringement theory under that construction, whether based on the entire TID or on only bits of the TID.  The Court now has held that the meaning is divorced from whether or how the claimed readers use the data, and has seemingly held that a single block of data, like the TID, could theoretically satisfy both the "characteristic identification data block" and the mutually exclusive "useful data" of the claims.  This contradicts the Court's initial construction that held that the "characteristic identification block" was not limited to a serial number that uniquely identifies the claims, but could incorporate other data, such as special data. Dkt. 247 at 15.  The Court even noted that the prior art Unique Identifier had extra bits beyond the identifier.  *Id.*  Allowing NXP to pursue this new theory under a new construction at this point is unfair.  The new construction expands the scope of applicable prior art significantly, but Impinj has had no opportunity to develop its invalidity case based on the construction.  Further, the accused F and S indicator bits in the TID are mandated by the Gen2 protocol, and NXP has agreed to license all of its patents that are "necessary" to practice the Gen2 protocol.  But this defense has not been previously plead because the Court's constructions did not seemingly allow a single data block to satisfy both limitations.  At this point, however, Impinj should be allowed to develop and rely on the Gen2 license from NXP since the patent apparently can be applied to the TID or EPC alone, at least in theory. Similarly, Impinj should be able to assert the claims are indefinite, as reflected, in part, by the Court's struggles to interpret the claims, and should further be allowed to assert they are directed to an abstract idea unpatentable under 35 U.S.C. § 101.  For these reasons and more, it would be patently unfair to require Impinj to go to trial on June 5th on this new construction--the trial must be delayed until these issues are resolved.

[PROPOSED] PRETRIAL ORDER- 35
(Case No. 2:20-cv-01503-JHC)

**NXP's Response:**

Impinj seeks, yet again, to delay trial, this time by offering new alleged defenses and complaining that the Court has changed claim constructions or introduced a new issue into the case. Impinj is wrong on every count.

To start with, the Court's construction of "identification data block" has been in the case at least since August 2021, when the parties filed an amended joint claim construction statement, and November 2022, when the Court issued its order on claim construction.  Impinj was long on notice of this potential construction, and as all parties to a patent litigation must, should have prepared for discovery, expert reports and trial based on the possibility that the Court's construction might adopt either side's proposal, or be something different.  True, the Court's Order Denying summary judgment on the '092 stated that "[w]hile the Court did not expressly modify its initial construction in its summary judgment order, the Court did still at least imply that 'identification data block' means something more than just 'identification data in memory.'"  But the Court made it clear that is original November 2022 construction—"identification data stored in memory"—continues to be the governing construction.  And, in any event, this proposed construction was long in the case and Impinj cannot credibly claim surprise.

Nor may Impinj now raise many new and substantive (albeit unmeritorious) defenses.  Again, the governing construction has been in the case for quite a while.  Had these new defenses even a shred of merit, Impinj would and should have asserted them long ago, as required under this Court's scheduling order and the rule.  Impinj's position here is remarkably inconsistent with its arguments that NXP should not be allowed to purse a lost profits defense actually disclosed during discovery. That the reason for the inconsistency is obvious (Impinj does not want to face trial on the full range of claims against it) does not make it right.

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

This case has been pending for years and it is ready for trial.  The parties have invested substantially in preparing the substance and the logistics (NXP will be bringing witnesses from Europe, after all).  There is no good reason for further delay.

DATED this <u>31st</u> day of <u>May</u>, 2023.

_____
JOHN H. CHUN
UNITED STATES DISTRICT JUDGE

[PROPOSED] PRETRIAL ORDER- 37
(Case No. 2:20-cv-01503-JHC)

PERKINS COIE LLP

By: _s/ Ramsey M. Al-Salam_
By: _s/Christina J. McCullough_
By: _s/Stevan R. Stark_
By: _s/R. Tyler Kendrick_
    Ramsey M. Al-Salam, WSBA #18822
    Christina J. McCullough, WSBA #47147
    Stevan R. Stark, WSBA #39639
    R. Tyler Kendrick, WSBA #55094
    Jessica J. Delacenserie, WSBA #59896
    1201 Third Avenue, Suite 4900
    Seattle, WA  98101-3099
    Tel: 206.359.6385
    Fax: 206.359.9000
    Email:  RAlSalam@perkinscoie.com
    Email:  CMcCullough@perkinscoie.com
    Email:  SStark@perkinscoie.com
    Email:  RKendrick@perkinscoie.com
    Email:  JDelacenserie@perkinscoie.com

    Daniel T. Keese (_pro hac vice_)
    1120 NW Couch Street, 10th Floor
    Portland, OR 97209
    Tel: 503.727.2132
    Fax: 503.346.2132
    Email: DKeese@perkinscoie.com

    Brianna Kadjo (_pro hac vice_)
    1900 Sixteenth Street, Suite 1400
    Denver, CO 80202
    Tel: 303.291.2300
    Fax: 303.291.2400
    Email: BKadjo@perkinscoie.com

_Attorneys for Impinj, Inc._

HARRIGAN LEYH FARMER & THOMSEN LLP

By: _s/ Tyler L. Farmer_
By: _s/ Chelsey L. Mam_
    Tyler L. Farmer, WSBA #39912
    Chelsey L. Mam, WSBA #44609
    999 Third Avenue, Suite 4400
    Seattle, WA 98104
    Tel:  (206) 623-1700
    Fax: (206) 623-8717
    Email: tylerf@harriganleyh.com
    Email: chelseym@harriganleyh.com
JONES DAY

    Tharan Gregory Lanier (_admitted pro hac vice_)
    Michael C. Hendershot (_admitted pro hac vice_)
    1755 Embarcadero Road
    Palo Alto, CA 94303
    Tel: (650) 739-3939
    Email:  tglanier@jonesday.com
    Email:  mhendershot@jonesday.com

    Thomas W. Ritchie (_admitted pro hac vice_)
    Timothy J. Heverin (_admitted pro hac vice_)
    Lisa L. Furby (_admitted pro hac vice_)
    John M. Michalik (_admitted pro hac vice_)
    110 North Wacker Drive, Suite 4800
    Chicago, IL 60606
    Tel: (312) 269-4003
    Email: twritchie@jonesday.com
    Email: tjheverin@jonesday.com
    Email: lfurby@jonesday.com
    Email: jmichalik@jonesday.com

    T. Kaitlin Crowder (_admitted pro hac vice_)
    901 Lakeside Ave
    Cleveland, OH 44114
    Tel: (216) 586-7347
    Email:  kcrowder@jonesday.com

[PROPOSED] PRETRIAL ORDER- 38
(Case No. 2:20-cv-01503-JHC)

Yury Kalish (*admitted pro hac vice*)
Tracy A. Stitt (*admitted pro hac vice*)
51 Louisiana Avenue, N.W.
Washington D.C. 20001
Tel: (202) 879-3939
Email:  ykalish@jonesday.com
Email:  tastitt@jonesday.com

Jonathan McNeal Smith (*admitted pro hac vice*)
JONES DAY
555 South Flower Street, Fiftieth Floor
Los Angeles, CA 90071
Tel: (213) 243-2559
Email: jonathansmith@jonesday.com

H. Albert Liou (*admitted pro hac vice*)
JONES DAY
777 Texas, Suite 3300
Houston, TX 77022-2712
Tel: (832) 239-3939
Email: aliou@jonesday.com

*Attorneys for NXP USA, Inc. and NXP B.V.*

[PROPOSED] PRETRIAL ORDER- 39
(Case No. 2:20-cv-01503-JHC)