UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NXP USA, INC., and NXP B.V., <br><br> Plaintiffs, <br><br> v. <br><br> IMPINJ, INC., <br><br> Defendant. | CASE NO. 2:20-cv-01503-JHC <br><br> REDACTED[1] ORDER RE: MOTION TO EXCLUDE CERTAIN OPINIONS OF DR. MADISETTI |

# I

## INTRODUCTION

Before the Court is Impinj's motion to exclude certain opinions of expert Dr. Vijay Madisetti. Dkt. # 292 (sealed motion); Dkt. # 274 (redacted motion); *see also* Dkt. # 354 (reply brief). NXP opposes the motion. Dkt. # 331 (sealed response); Dkt. # 324 (redacted response). For the reasons below, the Court GRANTS the motion in part, DENIES the motion in part, and STRIKES the motion in part as moot.

---

[1] The Court provisionally sealed its initial order. Dkt. # 477. After hearing from the parties about what material, if any, must remain sealed in the public version of the order (Dkt. # 511), the Court hereby publishes this redacted version of the order.

REDACTED0F0F ORDER RE: MOTION TO EXCLUDE
CERTAIN OPINIONS OF DR. MADISETTI - 1

II

DISCUSSION

Impinj moves to exclude certain opinions of NXP's expert witness Dr. Madisetti. According to Impinj, certain of Dr. Madisetti's opinions were not adequately disclosed in NXP's infringement contentions, and thus should be excluded. The Court addresses each argument in turn.

A.      The '092 Patent

Impinj challenges the adequacy of NXP's disclosure of its infringement theories for U.S. Patent Number 7,257,092 (the '092 Patent). Dkt. # 292 at 7–10. The claims of the '092 Patent require that an RFID tag return both (1) part of the "identification data block" and (2) "specific useful data" during an inventorization procedure. See '092 Patent at 17:47–65. In its infringement contentions, NXP said that the "electronic product code" (EPC) satisfies the "identification data block" limitation of the claim, and that "TID data" satisfies the "specific useful data" limitation of the claim. See, e.g., Dkt. # 293-1 at 35.

In Dr. Madisetti's report, however, NXP modified its approach. See generally Dkt. # 293-3. In addition to the theory contained in NXP's original infringement contentions, Dr. Madisetti asserted three "alternative infringement scenarios" "[t]o the extent" that Impinj argued that "TID data" is part of the identification data block and is not specific useful data. Id. at 3. In "Alternative Infringement Scenario 1," the EPC still serves as the identification data block. Id. But instead of the entire 96-bit TID block serving as the claimed specific useful data, this scenario posited that only the "Security (S) indicator" bit and the "File (F) indicator" bit—two of the TID data's 96 bits—serve as specific useful data. Id. In "Alternative Infringement Scenario 2," the EPC *and* 94 bits of TID data serve as the identification data block, while the Security and File indicators serve as specific useful data. Id. at 4. And in "Alternative Infringement Scenario

3," the 96-bit TID serves as the identification data block, while the EPC serves as the specific useful data. *Id.*

Starting with the third alternative infringement scenario: the Court does not understand NXP to be meaningfully pressing this scenario—that TID data is the "identification data block" and the EPC is "specific useful data." But to the extent that NXP still does assert this alternative infringement scenario, it cannot plausibly be argued that it was adequately disclosed. It is the exact *opposite* of the theory disclosed in NXP's original infringement contentions, in which the EPC served as the identification data block and TID data served as useful data. Dr. Madisetti may not offer any opinions based on this third theory.

However, while a close question, the Court declines to exclude Dr. Madisetti from offering opinions as to the first and second alternative infringement scenarios (collectively, the "subset infringement scenarios").

An expert report may "elaborate[] on the manner in which [a defendant] allegedly infringes" without amounting to "a last-minute disclosure of a new infringement theory." *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-CV-03999-BLF, 2015 WL 3640694, at *3 (N.D. Cal. June 11, 2015). "The dispositive inquiry in a motion to strike is thus whether the allegedly undisclosed 'theory' is in fact a new theory or new element of the accused product alleged to practice a particular claim that was not previously identified in the plaintiff's contentions, or whether the 'theory' is instead the identification of additional evidentiary proof showing that the accused element did in fact practice the limitation." *Id.* at *2.

The subset infringement scenarios straddle the line between an impermissible "new theory" and permissible elaboration on a disclosed theory. Impinj presents a plausible argument that the subset infringement theories are entirely new. After all, the infringement contentions did

REDACTED0F0F ORDER RE: MOTION TO EXCLUDE
CERTAIN OPINIONS OF DR. MADISETTI - 3

not mention any infringement theory based on a subset of the TID data; nor did the infringement contentions discuss a "Security (S)" bit or "File (F)" bit.

But NXP's position is at least equally as plausible. The infringement contentions disclosed NXP's position that the TID data qualifies as "specific useful data." There is a reasonable argument that the subset infringement scenarios merely add more detail to that initial disclosure by specifying which component(s) of the TID data render the TID data "useful data" and why the TID data constitutes useful data. Aside from the third alternative scenario (which the Court has excluded), the two remaining theories both argue that a portion of the TID data serves as useful data. NXP disclosed its contention that the TID data satisfies the "useful data" limitation, even if it did not disclose its contention that a subset thereof also satisfied that limitation.

While the Court finds both positions persuasive, the Court does not find itself in perfect equipoise. Two additional factors nudge the Court—ever so slightly—to allow Dr. Madisetti and NXP to present the subset infringement scenarios.

First, Impinj's *non-infringement* contentions were not particularly detailed. Impinj's non-infringement contentions stated that the claimed "identification data block"/"specific useful data" limitation is not met, but did not state with particularity why it is not met. *See* Dkt. # 327-14 at 2–4. For example, Impinj said in its non-infringement contentions that the tags "backscatter a TID and EPC," but did not state its position that the TID is not useful data but is instead part of the identification data block. *Id.* at 4. To be sure, Impinj's response to a contention interrogatory was slightly more specific. Impinj explained that "[n]one of the Accused Products transmit 'specific useful data (n×UDB)' during the accused FastID functionality. Instead, the FastID functionality causes the tags to backscatter RN16, EPC and TID." Dkt. 293-3 at 12. But even this response did not clearly state Impinj's position that TID data is not useful data and is instead part of the identification data block. And

indeed, NXP did not oppose Impinj's request to amend its '092 non-infringement contentions to clearly articulate its non-infringement theory, providing an equitable reason to deny the motion. Dkt. ## 331 at 13, 327-18 at 2–3. Accordingly, the Court gives NXP some leeway to have tweaked its infringement theories "[to] the extent" that Impinj argued that TID data was not specific useful data. Dkt. # 293-3 at 3.

Second, while Impinj may have suffered some prejudice, the Court does not believe that prejudice to be undue. Impinj's experts had an opportunity to address the subset infringement contentions in their reports, and the subset infringement scenarios were disclosed before the close of fact discovery. The trial date was also continued, allowing Impinj additional time to prepare to meet these arguments effectively.

Ultimately, it is a close question whether NXP should be permitted to pursue its subset infringement scenarios. But at this point, the Court prefers to allow the parties to proceed on the merits. Accordingly, the Court grants the motion as to the third alternative infringement scenario but denies the motion as to the subset infringement scenarios (alternative infringement scenarios one and two).

B.   The '097 Patent

Impinj moves to exclude certain of Dr. Madisetti's opinions relating to U.S. Patent Number 7,347,097 (the '097 Patent) that it says were not timely disclosed. Dkt. # 292 at 10–12. In NXP's infringement contentions, it asserted that the recited "voltage-raising means" in the accused products is a ███████████████████████████████████████ ████████████████ In Dr. Madisetti's infringement report, however, he asserts that the recited "voltage-raising means" is a *combination* of a ████████ and ████████████ Impinj moves to exclude any opinions by Dr. Madisetti based on this undisclosed combination. *Id.*

The Court agrees with Impinj: The ▮▮▮▮▮▮er combination was not timely disclosed in NXP's infringement contentions. Neither Dr. Madisetti nor NXP may not rely on a ▮▮▮▮▮▮ combination to satisfy the "voltage-raising means" term.

C. The '951 Patent

Impinj moves to exclude certain of Dr. Madisetti's opinions relating to U.S. Patent Number 7,795,951 (the '951 Patent) that it says were not timely disclosed. Dkt. # 292 at 12–14.

After this motion was filed, the Court granted Impinj's motion for summary judgment of non-infringement as to the '951 Patent. Dkt # 414 at 25–30. Accordingly, the Court strikes this portion of the motion as moot.

### III
#### CONCLUSION

For the reasons above, the Court GRANTS the motion to exclude in part, DENIES the motion in part, and STRIKES the motion in part as moot. Dkt. ## 292, 274.

Dated this 22nd day of May, 2023.

*John H. Chun*

John H. Chun
United States District Judge